**UNITED STATES of America, Plaintiff–Respondent,**

v.

**Theron LIVELY, Defendant–Petitioner.**

**Crim. A. No. 91–42 LON.**

United States District Court, D. Delaware.

March 31, 1993.

---

Robert Prettyman, U.S. Attorney's Office, Wilmington, DE, for plaintiff-respondent.

Cheryl J. Sturm, West Chester, PA, for defendant-petitioner.

## *OPINION*

LONGOBARDI, Chief Judge.

## I. *BACKGROUND*

On August 22, 1991, a jury convicted the Petitioner, Theron Lively ("Lively"), of two counts under 21 U.S.C. § 860(b) for knowingly distributing cocaine within 1,000 feet of the Redding Middle School and two counts under 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) for knowingly distributing cocaine. Petitioner's conviction was affirmed without opinion by the United States Court of Appeals for the Third Circuit in *United States v. Lively*, 968 F.2d 15 (3d Cir.1992). His present motion under 28 U.S.C. § 2255 to vacate, set aside or correct his sentence, Docket Item ("D.I.") 40, is before this Court for "preliminary con-

sideration," pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings.[1]

Rule 4(b) of the Rules Governing Section 2255 Proceedings requires that the Court perform a preliminary examination of the motion, together with "all the files, records, transcripts, and correspondence relating to the judgment under attack." Rule 4(b), 28 U.S.C. § 2255. If it "plainly appears" that the movant is not entitled to relief, the motion must be summarily dismissed. *Id.* Otherwise, the Court must "order the United States Attorney to file an answer" or otherwise plead within a specified period of time. *Id.*

"Rule 4(b) recognizes that summary dismissal of meritless motions under § 2255 is appropriate to relieve the district courts from the heavy burden which an obligation of hearings and findings on these motions would impose." *Abatino v. United States,* 750 F.2d 1442, 1444 (9th Cir.1985). The Third Circuit recently delineated the standard under which a district court may exercise its discretion to summarily dismiss a section 2255 petition without a hearing in *United States v. Day,* 969 F.2d 39 (3d Cir.1992). The court stated that

"[w]hen a motion is made under 28 U.S.C. § 2255 the question of whether to order a hearing is committed to the sound discretion of the district court. In exercising that discretion the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record. Further, the court must order an evidentiary hearing to determine the facts unless the motion and files and records of the case show conclu-

sively that the movant is not entitled to relief."

*Id.* at 41–42 (quoting *Government of Virgin Islands v. Forte,* 865 F.2d 59, 62 (3d Cir. 1989)).

▮▮▮ Thus, a section 2255 motion may be denied if the movant's allegations, viewed against the record, either do not state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal. *See Marrow v. United States,* 772 F.2d 525, 526 (9th Cir.1985); *Abatino,* 750 F.2d at 1444; *Baumann v. United States,* 692 F.2d 565, 571 (9th Cir.1982). "At this [preliminary] stage, defendant's factual allegations must be accepted as true, unless they clearly are frivolous on the basis of the existing record." *United States v. Singer,* Crim. No. 85–00283–01, 1990 WL 161258, at *1 (E.D.Pa. Oct. 18, 1990) (citing *United States v. Williams,* 615 F.2d 585, 591 (3d Cir.1980)). Moreover, a district court judge may properly refer to his or her own recollection of the proceedings in a determination of a § 2255 motion. *See Abatino,* 750 F.2d at 1444 (citing *Gustave v. United States,* 627 F.2d 901, 903 (9th Cir.1980); *Blackledge v. Allison,* 431 U.S. 63, 74 n. 4, 97 S.Ct. 1621, 1629 n. 4, 52 L.Ed.2d 136 (1977)).

▮▮▮ Petitioner's motion challenges his sentence based on a violation of his Sixth Amendment right to the assistance of counsel. For the reasons that follow, the Court rejects this challenge and summarily denies Petitioner's motion as unmeritorious pursuant to Rule 4(b) of the Rules Governing

---

1. 28 U.S.C. § 2255 provides in relevant part:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

A motion for such relief may be made at any time.

Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. If the court finds that ... the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

Section 2255 Proceedings.[2]

## II. INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM

Petitioner claims that he received ineffective assistance of counsel at his trial on August 21–22, 1991. The first ground raised by Lively is that his attorney committed a non-strategic trial error by calling Lively as a defense witness at the trial. The second ground raised by Lively is that his attorney provided ineffective assistance because he failed to object to the government's improper summation. In conjunction with this claim, the Petitioner asserts that he suffered prejudice from his attorney's failure to object to the allegedly improper summation of the prosecutor.

■ The standards for evaluating ineffective assistance of counsel claims under the Sixth Amendment were delineated by the Supreme Court in *Stricklnad v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under the Sixth Amendment, a criminal defendant has a right to "reasonably effective assistance" of counsel. *Id.* at 687, 104 S.Ct. at 2064. To establish that his representation was constitutionally inadequate, the Petitioner must show that his attorney's performance was deficient and unreasonable under prevailing professional standards and that this performance prejudiced the defense, *i.e.,* "that there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." *Government of Virgin Islands v. Forte,* 865 F.2d 59, 62 (3d Cir.1989) (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068) (other citation omitted).

■ Related to the first prong of the *Strickland* test, "[w]hen a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland,* 466 U.S. at 687–88, 104 S.Ct. at 2064. The proper measure of attorney performance is reasonableness under prevailing professional norms and considering all the circumstances. *Id.* at 688, 104 S.Ct. at 2064–65. In evaluating the challenged conduct, the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, 104 S.Ct. at 2065 (citation omitted).

■ Recently, the Supreme Court revisited the *Strickland* test in *Lockhart v. Fretwell,* —— U.S. ——, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). While affirming *Strickland's* basic contours, the *Fretwell* court clarified that the prejudice prong of the test does not focus solely on mere outcome determination. *Id.* —— U.S. at ——, 113 S.Ct. at 842.

2. At the outset, the Court notes that the Petitioner has not proffered any nonfrivolous "factual" allegations in support of his section 2255 motion, nor has he submitted any affidavits in support of his claims. *Cf. United States v. Dawson,* 857 F.2d 923, 927 (3d Cir.1988) (district court must consider as true all nonfrivolous factual allegations in determining whether a hearing should be held on an ineffectiveness claim). Instead, as discussed at length below, Lively has presented nothing more than bald assertions and conclusory allegations. "[B]ald assertions and conclusory allegations do not afford a sufficient ground for an evidentiary hearing" on a habeas corpus petition. *Mayberry v. Petsock,* 821 F.2d 179, 185 (3d Cir.) (citation omitted) (section 2254 petition), *cert. denied,* 484 U.S. 946, 108 S.Ct. 336, 98 L.Ed.2d 362 (1987). *See also Zettlemoyer v. Fulcomer,* 923 F.2d 284, 298 & n. 12 (3d Cir.) (section 2254 petition), *cert. denied,* —— U.S. ——, 112 S.Ct. 280, 116 L.Ed.2d 232 (1991); *Barry v. United States,* 528 F.2d 1094, 1101–02

(7th Cir.) (section 2255 petition), *cert. denied,* 429 U.S. 826, 97 S.Ct. 81, 50 L.Ed.2d 88 (1976). Rather, the petitioner must set forth facts to support his contentions. *Zettlemoyer,* 923 F.2d at 298 (citing *Mayberry,* 821 F.2d at 187). Moreover, to warrant an evidentiary hearing, a claim for ineffective assistance of counsel must satisfy both prongs of the *Strickland* test, discussed *infra,* accepting the veracity of the defendant's factual allegations as true. *Wells v. Petsock,* 941 F.2d 253, 259–60 (3d Cir.1991) (citing *Dawson,* 857 F.2d at 928), *cert. denied,* —— U.S. ——, 112 S.Ct. 3038, 120 L.Ed.2d 906 (1992); *United States v. Barber,* 808 F.Supp. 361, 381 (D.N.J. 1992). Because the Petitioner's speculative conclusions and bald assertions do not afford a sufficient ground for an evidentiary hearing and because the Court concludes below that both prongs of *Strickland* are not satisfied in the instant case, the Court finds that an evidentiary hearing is not warranted on the present record.

The Supreme Court held that to establish prejudice a criminal defendant must show that counsel's deficient representation rendered the result of his trial fundamentally unfair or unreliable. *Id.* See also *Strickland*, 466 U.S. at 686, 697, 104 S.Ct. at 2063–64, 2069–70 (benchmark for judging ineffectiveness claim is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result; an ineffectiveness claim is an attack on the fundamental fairness of the proceeding whose result is challenged). Further, "[u]nreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Fretwell*, —— U.S. at ——, 113 S.Ct. at 844.

 Moreover, the burden of proof and persuasion rests with the Petitioner to establish ineffective assistance of counsel at trial. *United States v. Davenport*, 986 F.2d 1047, 1048–49 (7th Cir.1993) (citing *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064). When bringing an ineffective assistance of counsel claim, the Petitioner has the burden of demonstrating that the challenged action of counsel was not what "might be considered sound trial strategy." *Sanchez v. United States*, 782 F.2d 928, 935 (11th Cir.1986) (quoting *Strickland, supra*).

## A. *CALLING THERON LIVELY AS A WITNESS ON HIS OWN BEHALF*

 Lively's first claim of ineffective assistance is that his counsel committed a non-strategic trial error by calling Lively to testify in his own defense at trial. Petitioner proffers two reasons why calling him as a witness was error. First, Lively had a recent conviction for the identical crime charged in the instant case, *i.e.*, selling drugs within 1,000 feet of a school. Second, Lively claims that his testimony was entirely cumulative because his mother, brother and girlfriend had previously testified about his alibi defense. According to Lively, it stands to reason that if the jury was unpersuaded by alibi testimony from his mother, brother and

girlfriend, who had no criminal records, it was not going to be persuaded by the testimony of a defendant with a recent prior conviction for the identical offense. The above allegations represent the entire sum and substance of Petitioner's ineffective assistance claim.

At his trial, Lively's primary defense was misidentification supported by an alibi defense. Three witnesses testified on behalf of the prosecution. All three were New Castle County Police Officers. Two of the officers testified that on February 1, 1991 at approximately 10:45 p.m., they each made an undercover purchase of cocaine from Lively.[3] At the time of the purchases, the undercover police officers were seated in an undercover vehicle, a pickup truck. Each testified that Lively approached the driver's side window of the truck, and while standing there, engaged in conversation with them related to the drug sales. The sales were then consummated. The undercover officers testified that they taped the conversation by means of a tape recorder which was concealed on the truck seat between them. The third police officer testified that he was conducting surveillance of the undercover operation. From his surveillance position and using binoculars, the officer observed Lively in the area for several minutes before the drug sales transaction and also observed him conducting the transaction with the two undercover officers.

The crux of Lively's misidentification defense was that the three police officers erroneously identified him as the suspect who made the drug sales to the two undercover officers. In support of his defense, Lively called various alibi witnesses who testified that Lively was at home watching videotapes in his bedroom at the approximate time of the incident. While the Petitioner now characterizes their testimony as cumulative, the Court disagrees with such a rigid characterization.

Petitioner asserts in the instant petition that his brother testified that he was at home watching movies on February 1, 1991 at 10:45 p.m., the same time the police witnesses testified that he was selling drugs to un-

---

3. These two purchases were the basis for all four counts on which Lively was tried.

dercover officers. This assertion grossly misstates the testimony of Lively's brother.

It is indeed accurate that Lively's brother, Forice Lively, was called as an alibi witness at his trial. Throughout his testimony, however, he incorrectly identified the night in question as February 1, 1990, rather than the date on which the drug sales occurred, i.e., February 1, 1991. Moreover, Lively's brother never testified to Lively's exact whereabouts at the time of the alleged crime. Rather, Forice Lively testified that his brother was "usually" at home at nighttime and that he did not see his brother out in the neighborhood on the night in question. He testified that their house was within one block's distance of the location of the drug sales transaction. He further testified that sometime before 11:30 p.m. he saw his brother outside of the house lending his car to a friend, after which Lively went back into the house. Forice Lively at no time testified that his brother was home watching movies at 10:45 p.m. on February 1, 1991, or indeed on any night.

Lively's mother was the next alibi witness called by the defense. She testified that on February 1, 1991, her son was home upstairs in his bedroom from about 6:00 p.m. or 7:00 p.m. until he arose the next morning except for when he came downstairs to get a sandwich or soda, and that he did not leave the house during that time. Mrs. Lively also testified, however, that she left the house at some time after 9:45 p.m. to go to the store, but she did not testify as to when she returned to the house. Lively's mother further testified that she remembered her son's whereabouts on February 1, 1991, because an acquaintance of her son, Donald Gillis ("Gillis"), came to the house the next day, a Saturday, to tell her son that the police had been looking for him the night before. Her testimony was contradicted by Gillis, however, who had testified previously that he spoke to Lively about the incident on the following Monday. The alibi testimony of Mrs. Lively differed entirely with that of her son, Forice Lively, and cannot be considered cumulative to his testimony.

The next alibi witness was Lively's girlfriend, Lisa Garnet ("Garnet"). Garnet testi-fied that she spent the entire night of February 1, 1991 with Lively in his bedroom. She testified inconsistently with Gillis' testimony, stating that she remembered the events of that night because Gillis came to the house the next day, a Saturday, to talk to the Petitioner. She also testified inconsistently with the testimony of Mrs. Lively and Forice Lively, stating that after about 8:00 p.m., the Petitioner never left the bedroom. Garnet's alibi testimony differed in significant respects from the testimony of Forice Lively and Mrs. Lively. Thus, Garnet's alibi testimony was not plainly cumulative when measured against their testimony.

The Petitioner took the stand on his own behalf in part as the final alibi witness. Lively testified that on the night in question, he was with Garnet in his bedroom watching movies. At about 10:00 p.m., he went downstairs to give his friend the keys to his car. He testified that he also went downstairs during the night to get soda or other things. While portions of his testimony corroborated the alibi testimony that preceded his testimony, other portions were inconsistent. Contrary to his girlfriend's testimony, for example, he testified that he did not spend the entire night in his bedroom. Further, contrary to his brother's testimony, the Petitioner testified that he did not leave the house when he lent his friend his car. Because the three alibi witnesses preceding Lively did not testify consistently with each other or with Lively, the Court is unable to conclude that Lively's testimony was cumulative to theirs. In fact, while on the witness stand Lively corroborated portions of his alibi that, but for his testimony, would have been fraught with inconsistency.

As additional support for his ineffectiveness claim, Petitioner contends that his counsel's action in calling him as a witness opened the door for the jury to learn of his prior felony conviction for the same offense. Petitioner asserts his testimony was "impeached" with the prior conviction. This statement is not, however, a completely accurate portrayal. Rather, Lively admitted his prior conviction on direct examination, and testified that although he was on drugs at the time of that crime, he had since recovered from his addic-

tion and was staying out of trouble. Thus, Lively took the opportunity to tell the jury about his prior conviction before the prosecutor could first impeach him.

■ Significantly, in his section 2255 petition, Lively fails to mention that a substantial portion of his misidentification defense was devoted to his contention that it was not his voice on the tape recording made by the police officers during the drug sales transaction, and that Lively testified in part so that the jurors could make their own comparison of his voice to the voice on the tape recording. Lively's mother testified that after listening about thirty times to the tape recording made by the undercover police officers during the drug sales transaction, she determined that the suspect's voice was not that of her son, the Petitioner. Garnet similarly testified that the voice on the tape was not that of the Petitioner. A third defense witness, Theodore Anderson, also testified that he had known Lively his entire life and that the suspect's voice on the tape was not Lively's voice. Finally, after testifying that it was not his voice on the tape recording, Lively read to the jury those portions of the transcript of the taped conversation which allegedly were his words. Had Lively not testified, the jury would have had no basis for comparison of the voices, a major component of Lively's misidentification defense.

■ Lively fails to demonstrate that the decision to waive his Fifth Amendment right not to testify constitutes ineffective assistance. Lively proffers no factual, nonfrivolous allegations which, if accepted as true, show otherwise. Indeed, Lively makes absolutely no factual allegations whatever concerning how the decision that he testify was made. For example, Lively does not allege that he did not make the decision to take the witness stand. Lively does not allege that his trial counsel coerced him to testify on his own behalf at trial, thereby waiving his Fifth Amendment right not to testify. Lively does not allege that his counsel coerced him into utilizing an alibi or misidentification defense. Lively does not allege that the decision to testify or use these defenses was made without his participation or concurrence. Lively likewise does not allege that other defenses

were available to him which would have met with greater success. Lively does not suggest that he raised other defenses to his counsel and that they were rejected. Finally, Lively does not suggest that other defense witnesses were available who may have contributed to a more successful defense.

■ In the absence of such allegations, the Court assumes that Lively ultimately made the decision to testify on his own behalf. Lively having made the decision cannot now complain of the consequences of that decision. While courts have recognized counsel's duty to advise the defendant of his right to testify or not to testify and the strategic implications of each choice, the decision whether or not to testify belongs ultimately to the defendant. *United States v. Robles,* Crim. No. 92–00047, 1993 WL 46685, at *9 (E.D.Pa. Feb. 25, 1993) (citing *United States v. Teague,* 953 F.2d 1525, 1533 (11th Cir.) (en banc), *cert. denied,* — U.S. —, 113 S.Ct. 127, 121 L.Ed.2d 82 (1992)). Moreover, the right of a criminal defendant to testify on his own behalf has been recognized as a "fundamental" constitutional right by the Supreme Court in dictum on several occasions. *Lema v. United States,* 987 F.2d 48, 53 n. 4 (1st Cir.1993) (citing *Rock v. Arkansas,* 483 U.S. 44, 53 n. 10, 107 S.Ct. 2704, 2710 n. 10, 97 L.Ed.2d 37 (1987); *Nix v. Whiteside,* 475 U.S. 157, 164, 106 S.Ct. 988, 992–93, 89 L.Ed.2d 123 (1986); *Jones v. Barnes,* 463 U.S. 745, 751, 103 S.Ct. 3308, 3312–13, 77 L.Ed.2d 987 (1983); *Wainwright v. Sykes,* 433 U.S. 72, 93 n. 1, 97 S.Ct. 2497, 2510 n. 1, 53 L.Ed.2d 594 (1977) (Burger, C.J., concurring)). *Accord United States ex rel. Wilcox v. Johnson,* 555 F.2d 115, 118–19 (3d Cir.1977). This right may not be waived by counsel, but is personal to the defendant who alone may decide whether the right will be exercised or waived. *Rogers–Bey v. Lane,* 896 F.2d 279, 283 (7th Cir.) (citation omitted), *cert. denied,* 498 U.S. 831, 111 S.Ct. 93, 112 L.Ed.2d 65 (1990).

■ The Court additionally concludes that the decision to put the Defendant on the witness stand to testify as to his alibi and for the purpose of allowing the jury to make a comparison of his voice to the voice on the

tape recording was a strategic one. Generally, "[d]ecisions on which witnesses to call to testify are normally strategic decisions left to counsel." *United States v. Griffin,* Crim. No. 91–612, 1993 WL 34927, at *5 (E.D.Pa. Feb. 9, 1993) (citing *Diggs v. Owens,* 833 F.2d 439 (3d Cir.1987), *cert. denied,* 485 U.S. 979, 108 S.Ct. 1277, 99 L.Ed.2d 488 (1988)) (other citations omitted). Indeed, the decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the kind engaged in by defense attorneys in almost every criminal trial. *United States v. Nersesian,* 824 F.2d 1294, 1321 (2d Cir.), *cert. denied,* 484 U.S. 958, 108 S.Ct. 357, 98 L.Ed.2d 382 (1987). As a general rule, decisions relating to a reasoned choice of trial strategy and tactics "are not cognizable in a federal habeas corpus proceeding" in the context of an ineffective assistance of counsel claim. *Mills v. Armontrout,* 926 F.2d 773, 774 (8th Cir. 1991) (quoting *Comer v. Parratt,* 674 F.2d 734, 737 (8th Cir.), *cert. denied,* 459 U.S. 856, 103 S.Ct. 125, 74 L.Ed.2d 108 (1982)).

▮ Lively's claim of ineffective assistance of counsel in regard to calling him as a defense witness boils down to a disagreement with his counsel's trial strategy. "Mere criticism of a tactic or strategy," however, "is not in itself sufficient to support a charge of inadequate representation." *United States v. Vincent,* 758 F.2d 379, 382 (9th Cir.) (quoting *Gustave v. United States,* 627 F.2d 901, 904 (9th Cir.1980)), *cert. denied,* 474 U.S. 838, 106 S.Ct. 116, 88 L.Ed.2d 95 (1985). This is particularly dispositive "[w]here a defendant, fully informed of the reasonable options before him, agrees to follow a particular strategy at trial." *United States v. Weaver,* 882 F.2d 1128, 1140 (7th Cir.), *cert. denied,* 493 U.S. 968, 110 S.Ct. 415, 107 L.Ed.2d 380 (1989). *See also United States v. Kamel,* 965 F.2d 484, 497 & n. 39 (7th Cir.1992) (defendant chose to rely on alibi defense); *Rogers–Bey,* 896 F.2d at 283 (defendant chose on advice of counsel not to testify). In this instance, "that strategy cannot later form the basis of a claim of ineffective assistance of counsel." *Weaver,* 882 F.2d at 1140 (citing *United States v. Williams,* 631 F.2d 198, 204 (3d Cir.1980)). Calling Lively as a witness was a strategic decision and under the

*Strickland* standard does not support Lively's claim of ineffective assistance of counsel. *Cf. Martin v. McCotter,* 796 F.2d 813, 817 (5th Cir.1986) (calling defendant as final alibi witness at trial for aggravated robbery, whose testimony acknowledged details of prior conviction for aggravated assault and whose alibi testimony bolstered the alibi testimony of various defense witnesses who preceded him, was reasonable trial strategy and did not constitute deficient performance by defense counsel under *Strickland* ), *cert. denied,* 479 U.S. 1057, 107 S.Ct. 935, 93 L.Ed.2d 985 (1987).

The Court finds that defense counsel's conduct in calling Lively as a witness falls within the wide range of reasonable professional assistance and Lively's bald and conclusory allegations cannot overcome *Strickland's* presumption that the challenged action be considered sound trial strategy. Because the Court concludes that the performance of Lively's counsel was not deficient in this regard, it need not address the prejudice test for ineffectiveness claims under *Strickland* and *Fretwell.*

## B. COUNSEL'S FAILURE TO OBJECT TO PROSECUTOR'S ALLEGEDLY IMPROPER SUMMATION

Petitioner contends the government's summation was improper for three reasons, and his attorney's failure to object to the improper comments constituted ineffective assistance of counsel. First, Lively argues that the summation appealed to the racial prejudices of the jury. Second, Lively contends the prosecutor bolstered the testimony of police witnesses with facts not in evidence. Finally, Lively argues that the summation denigrated defense witnesses by racial stereotyping.

### 1. Allegedly Racial Messages In Government's Summation

▮ The Petitioner's two contentions of improper racial comments by the prosecutor are utterly unfounded, speculative and without merit. According to Lively, the prosecutor initially attempted to appeal to the racial prejudices of the jury because the cornerstone of the summation was "SODDI,"

an acronym for "Some Other Dude Did It."[4] According to Lively, the SODDI reference appeals to the prejudices of the jury by the following "subliminal" syllogism: "all black men ["Dudes"] caught selling drugs claim misidentification; the defendant is black and claims misidentification; therefore, the defendant must be a drug dealer." D.I. 41 at 7.

In his opening statement, defense counsel described the Petitioner's misidentification defense. In addition to denying that Lively sold cocaine to the undercover police officers, Lively pointed the finger at another person, Gene Garrett ("Garrett"), as the correct suspect. In support of this theory, a defense witness testified that it was Garrett's voice on the tape recording of the drug sales transaction and another defense witness testified that Garrett was hanging around the area where the transaction took place about the time of the sales. Further, in cross-examining one of the police officers, Lively's attorney asked the officer if Garrett was a "dope dealer." Lively suggested throughout the course of the trial that Garrett was the actual perpetrator of the drug sales.

Referring to Garrett in his closing argument, the prosecutor stated that Officer Robert Schreiber ("Schreiber"), a government witness, knew Garrett, and the "Some Other Dude Did It" defense did not work as a result. The prosecutor continued, arguing that

> Gene Garrett is three inches smaller, Gene Garrett is 25 pounds lighter, and Gene Garrett is somebody that Officer Schreiber knows, and he knows his voice. Officer Schreiber said absolutely not Gene Garrett, it is not the voice on the tape, he wasn't the guy that approached the car, he

wasn't the guy who ran away, he wasn't the guy that Officer Schreiber saw with binoculars.

D.I. 34 at 18–19. The prosecutor's remarks about the SODDI defense went to rebut the inference that Garrett, and not Lively, committed the crimes being tried.

The Court finds that the Petitioner's allegation that these remarks were improper is groundless and wholly speculative. Lively makes no factual allegations to support his speculation that the jury was susceptible to racial prejudice. Notably, Lively does not contend that the jury was racially imbalanced. Stripped of its verbiage, his sole contention is that the SODDI reference might have appealed to racial prejudices of the jury, if in fact they had any prejudices. The Court cannot accept such speculative hyperbole, however, as a basis for concluding that the prosecutor's remarks were improper.

Manifestly, the prosecutor's remarks may not be construed as overtly racial. The question remains of whether there was a hidden racial message in the prosecutor's remarks. To reach a conclusion that the remarks were intended "subliminally" to appeal to racial prejudices, the Court must accept that the prosecutor's reference to "dudes" meant only black men and that the jury would understand "dudes" to only refer to black men. The Court refuses to engage in such speculation because the word "dude" is used in any number of contexts and certainly is not limited to men or women of a particular race. The Court rejects as frivolous, therefore, a conclusion that "dudes" equals black men.

Similarly, for the prosecutor's alleged subliminal syllogism to accomplish its goal of

---

4. The content of the prosecutor's remarks related to the "SODDI" defense follows in relevant part:

"Members of the jury, when I was in law school, the teacher who was showing us how to do trials was a judge who was a former prosecutor and a former defense attorney, so he had a lot of experience, and what he told us is when you have a drug case, one of the common defenses is called the SODDI defense. Myself and about thirty other kids in the class said, 'What could this possibly stand for?' And the judge told us that it stands for 'Some Other Dude Did It,' because it is so common to have

to come up with something, especially when there are police officers who say, 'That is the guy who sold me the drugs,' and as an experienced person who knows the defendant, watching what is going on, they have to come up with something, and they all fall into the old common SODDI defense.

What I am going to show you hopefully within the next few minutes are all the reasons why the SODDI defense doesn't work here, give you a list of the reasons why the defendant is guilty and ask you to return a verdict of guilty."

D.I. 34 at 2–3.

**464**

appealing to the jury's hidden prejudices, the Court must conclude that all black men arrested for selling drugs raise a misidentification defense. Significantly, the Petitioner makes no factual allegations to support this conclusion nor does the Court believe he could do so. The Court likewise rejects as frivolous, therefore, a conclusion that all black men arrested for selling drugs raise a misidentification defense.

■ Because the Court finds that the prosecutor's remarks in summation about the SODDI defense were not improper, the Petitioner's claim that his counsel gave ineffective assistance for failing to object to the remarks must fail. Before the Court can conclude that a failure to object to an improper closing argument is ineffective assistance, the Court must first conclude that the closing argument was constitutionally improper. That is not the situation facing the Court, however.

■ In *Kimmelman v. Morrison,* 477 U.S. 365, 375, 106 S.Ct. 2574, 2582–83, 91 L.Ed.2d 305 (1986), the Supreme Court held that a meritorious Fourth Amendment claim was a necessary component of a successful Sixth Amendment claim where defense counsel's failure to make a timely suppression motion was the primary manifestation of incompetence and source of prejudice advanced by the petitioner. Thus, the *Kimmelman* court held that the defaulted Fourth Amendment claim was "one element of proof" of the Sixth Amendment claim of ineffective assistance of counsel. *Id.* Analogously, a meritorious due process claim based on the government's improper summation is a necessary component of a successful Sixth Amendment claim based on defense counsel's failure to object to the summation. The Court having determined that the Petitioner's first ground regarding the prosecutor's allegedly improper summation is without merit, it cannot provide the basis for a Sixth Amendment ineffective assistance claim. Thus, the Court need not address whether defense counsel's conduct in this regard constituted ineffective assistance under the *Strickland* test.

■ Lively then argues that the prosecutor's summation racially stereotyped defense witnesses, *i.e.,* "as if the prosecutor were casting 'Roots' as opposed to making closing argument in a criminal case." D.I. 41 at 9. Again, Lively contends that this racial stereotyping invoked a "subliminal" message for the jury. Lively asserts that the prosecutor developed a racial stereotype for each black defense witness and then denigrated the stereotype. According to Lively, the prosecutor's comments were "a subliminal appeal to the jury to infer that because the racial stereotype is unworthy of belief, the witness also must be unworthy of belief." *Id.*

Specifically, the Petitioner points to the following portion of the prosecutor's summation as improper racial stereotyping:

"Then [the defense witnesses] presented for you unbelievable or inconsistent stories—unbelievable in that how could they remember what was happening on February 1? Did they give you any real good strong rationale for why they believed they could remember February 1? Did they have a calendar? Did they have a diary? Did they have police reports to recall? Did they write down what they were doing like the officers write what they do in cases? No, they don't have that. What they have for you is: I watch videos in my room every night. My son is always upstairs with his girlfriend watching videos every night. That is why I know he couldn't be on the corner selling drugs. I am the girlfriend and I am with him upstairs watching videos every night. How can they tell one night from another when they do the same thing every night? What makes February 1 any different from February 8, January 30, August 21 or August 22? If you do the same thing every night, you are never going to remember what you did on any given night because they are all the same.

Then you have the brother—and I tried to give enough shots to say, hey, this was February, 1991—and I don't think I could have been much clearer, and I kept asking, 'February, '90? February, '90?' And he just stuck to his guns, February, 1990 was the date of the party. You can also use his demeanor as a reason whether or not to

believe his testimony. He looked like he just rolled out of bed. Are you going to believe a guy like that?"

D.I. 34 at 12–13 (underlined portions cited by Petitioner in section 2255 motion).

The Court finds that the prosecutor's statements on the credibility of the defense witnesses was an appropriate comment on the evidence adduced at trial. The Petitioner's bald assertions that the comments were improper racial stereotyping and read "as if the prosecutor were casting 'Roots' " are preposterous and bordering on being disingenuous. Absolutely nothing contained in the above comments reflects on the race of the witnesses. The Court rejects these frivolous allegations in their entirety and therefore, rejects Petitioner's related ineffective assistance claim.

### 2. *Allegedly Improper Bolstering of Witnesses With Facts Not In Evidence In Government's Summation*

Lively's final ineffectiveness claim is based on his counsel's failure to object to the prosecutor's allegedly impermissible bolstering of police witnesses with facts not in evidence during summation. According to the Petitioner, the prosecutor's remarks were improper under the reversal *per se* rule of *United States v. DiLoreto*, 888 F.2d 996, 999 (3d Cir.1989). Lively contends that the prosecutor's references to the New Castle County Police Officers who were government witnesses as being "trained" amounted to bolstering. Further, Lively contends that the record was void of evidence that the police involved in this case had special training.

 Lively asserts that if defense counsel had objected to the repeated references to the police officers as "superhumans," he could have won reversal on direct appeal under *DiLoreto, supra.* Instead, because defense counsel raised no objections, appellate review was for "plain error," *United States v.*

*Pungitore*, 910 F.2d 1084, 1125–26 (3d Cir. 1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2009, 114 L.Ed.2d 98 (1991), and Lively's direct appeal was unsuccessful under the plain error standard.[5]

 Because the Petitioner bases this Sixth Amendment claim on the prosecutor's comments during closing argument, the Court must first address whether the comments themselves rose to a level of a constitutional violation. *See, e.g., Kimmelman,* 477 U.S. at 375, 106 S.Ct. at 2582–83. In the context of a section 2255 motion, a court's standard of review of a prosecutor's comments during trial is a narrow one. *See Cumber v. Beyer*, Civ. No. 91–4193–CSF, 1992 WL 184363, at *5 (D.N.J. July 15, 1992) (section 2254 petition) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974)). "The relevant question is whether the prosecutor['s] comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986) (quoting *DeChristoforo*, 416 U.S. at 643, 94 S.Ct. at 1871). *See United States v. Scarfo*, 685 F.2d 842, 849 (3d Cir.1982), *cert. denied,* 459 U.S. 1170, 103 S.Ct. 815, 74 L.Ed.2d 1014 (1983). "It is not sufficient that the prosecutor's comments were undesirable ...; rather, habeas corpus relief should be granted only where the defect rises to the level of 'egregious conduct.' " *Cumber, supra*, at *5 (citing *Todaro v. Fulcomer*, 944 F.2d 1079, 1082 (3d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1271, 117 L.Ed.2d 498 (1992); *United States ex rel. Perry v. Mulligan*, 544 F.2d 674, 678 (3d Cir.1976), *cert. denied,* 430 U.S. 972, 97 S.Ct. 1659, 52 L.Ed.2d 365 (1977)).

 Generally, it is improper for the prosecution to vouch for the veracity of a government witness. *DiLoreto*, 888 F.2d at 998 (citing *United States v. Beaty*, 722 F.2d

---

5. The Court is compelled to observe that it has serious reservations as to whether Lively's allegations of prejudice satisfy the prejudice standards of *Strickland* and *Fretwell* for a successful ineffectiveness claim. *Strickland* and *Fretwell* require a petitioner to prove that, but for counsel's deficient representation, the result of his trial would have been different, and that the deficient representation rendered the *result of his trial* fundamentally unfair or unreliable. *Fretwell*, —— U.S. at ——, 113 S.Ct. at 842 (emphasis added). To the contrary, Lively argues that his counsel's deficient representation resulted in his loss on appeal of his conviction, and not that it rendered the result of his trial unfair or unreliable.

1090, 1097 (3d Cir.1983); *United States v. Swinehart*, 617 F.2d 336, 339 (3d Cir.1980)).[6] "Vouching may occur in two ways: the prosecution may place the prestige of the government behind the witness or may indicate that information not presented to the jury supports the witness's testimony." *United States v. Roberts*, 618 F.2d 530, 533 (9th Cir.1980) (citing *Lawn v. United States*, 355 U.S. 339, 359–60 n. 15, 78 S.Ct. 311, 322–23 n. 15, 2 L.Ed.2d 321 (1958)) (other citation omitted). *Accord United States v. Necoechea*, 986 F.2d 1273, 1275 (9th Cir.1993); *DiLoreto*, 888 F.2d at 998–99. Petitioner argues that the second form of vouching occurred in the instant case. Thus, to determine whether the prosecutor improperly bolstered the credibility of the police officers, the Court must determine whether the prosecutor supported the witnesses' veracity by facts outside the record. *Cumber, supra*, at *7 (citing *Beaty*, 722 F.2d at 1097).

Evidence in the record reveals that the officers were trained to focus on a suspect's face and hands during an undercover drug sales transaction. This evidence supported the inference by the prosecutor that the officers were perhaps better able to identify a suspect than the average person. Because the evidence supported the inference that the undercover officers were trained to identify suspects, the prosecutor's remarks did not improperly rely on facts not in evidence. Rather, these arguments were addressed strictly to the officers' abilities to perceive the criminal defendant's identity, and not to whether the prosecutor could vouch for their veracity on the witness stand. As such, the comments by the prosecutor were fair comment on the evidence adduced at trial.

■ Significantly, the challenged statements left undisturbed the jury's prerogative to decide all questions of credibility. Any ambiguity that may have resulted was cleared up by the Court's instruction to the jury in its final charge that evaluating the credibility of witnesses was the function of the jury. *See, e.g., United States v. Gambi-*

*no*, 926 F.2d 1355, 1367 (3d Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 415, 116 L.Ed.2d 436 (1991).

■ The Court finds that the prosecutor's conduct during his summation was in no way egregious and did not constitute a deprivation of Petitioner's due process rights to a fair trial. Absent a violation through prosecutorial misconduct of a specific guarantee of the Constitution, habeas corpus relief will not be granted unless the prosecution's conduct renders the trial fundamentally unfair so as to deny the defendant due process under the Fifth or Fourteenth Amendments. *Branch v. Estelle*, 631 F.2d 1229, 1233 (5th Cir.1980) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)) (other citations omitted). Because the prosecutor's conduct was not constitutionally improper, the Petitioner cannot establish a Sixth Amendment violation based on his attorney's failure to object to the prosecutor's arguments.

■ In addition, the Court alternatively concludes that defense counsel's failure to object to the prosecutor's comments during his closing argument was a matter of trial strategy and did not deny Lively reasonably effective assistance of counsel. Because many lawyers refrain from objecting during opening statement and closing argument, absent egregious misstatements by the prosecutor, the failure to object during closing argument and opening statement is within the "wide range" of permissible professional legal conduct, and thus does not constitute ineffective assistance of counsel. *Necoechea*, 986 F.2d at 1278 (citing *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065). *See also Drew v. Collins*, 964 F.2d 411, 423 (5th Cir.1992) (decision not to object to prosecutor's inflammatory closing argument was a matter of trial strategy and did not constitute ineffective assistance of counsel), *petition for cert. filed*, (U.S. Sept. 15, 1992) (No. 92–5865). The Court cannot conclude that defense counsel's

---

6. In *DiLoreto*, the prosecutorial vouching consisted of the following statements by the prosecutor in his rebuttal argument: "We don't take liars. We don't put liars on the stand. We don't do that." *DiLoreto*, 888 F.2d at 998. The Third Circuit found the statements to be improper because there was no evidence in the record explaining how the government "ascertains the honesty or veracity of its witnesses." *Id.* at 999–1000.

failure to object to the government's summation overcomes *Strickland's* presumption that the challenged action could be considered sound trial strategy. Because the Court concludes that the performance of Lively's counsel was not deficient in this regard, it need not address the prejudice argument raised by the Petitioner.

## III. CONCLUSION

For the foregoing reasons, Petitioner's motion to vacate, set aside or correct his sentence is summarily denied pursuant to Rule 4(b), 28 U.S.C. § 2255. An order consistent with this opinion shall be entered.