**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | |
| v. | ) | I.D. # 1404011405 |
| | ) | |
| WILLIAM D. ANDERSON, | ) | |
| | ) | |
| Defendant. | ) | |

Date Submitted: October 14, 2016
Date Decided: January 13, 2017

**Upon Defendant's Motion for Post-Conviction Relief: DENIED**

This 12th day of January, 2017, upon consideration of Defendant's Motion for Post-Conviction Relief (the "Motion") under Superior Court Criminal Rule 61 ("Rule 61"), the submissions of counsel, and the record in this case, it appears to the Court that:

## FACTUAL AND PROCEDURAL BACKGROUND

1. In April 2014, Defendant William Anderson was involved in an altercation with Gary Staffieri, who was Anderson's coworker at the Auto Mart in Elsmere, Delaware. Anderson was indicted on June 23, 2014 on a charge of Assault Second Degree under 11 *Del. C.* § 612(a)(6), which provides: "A person is guilty of assault in the second degree when: . . . (6) [t]he person . . . intentionally causes physical injury to another person who is 62 years of age or older." Staffieri was 67 at the time of the altercation.

2. Anderson's case proceeded to trial in January 2015, where he was represented by Timothy J. Weiler, Esq. (hereinafter, "Trial Counsel"). At trial, the State presented the testimony of Staffieri, who testified Anderson approached him while Staffieri was retrieving a battery from a back room and the next thing Staffieri remembered was waking up outside with a lump on his head. Another co-worker, Ricardo Reyes, testified that he witnessed the incident between Anderson and Staffieri, that Staffieri struck Anderson with his knee, and that Anderson then pushed and struck Staffieri. Reyes left the scene to get a supervisor and, when he returned, saw Staffieri having seizures, shaking, and with a large lump on his head. Finally, Elsmere Police Officer Andrew Davis testified that he interviewed Staffieri while he was receiving treatment at the hospital and that Staffieri reported that Anderson struck him in the head.

3. In his defense, Anderson called the owner of Auto Mart, Allan Bobb, who testified that Staffieri's demeanor was unusual on the day of the incident and that Staffieri admitted to drinking alcohol that morning. Anderson also testified in his own defense. He admitted to striking Staffieri, but stated he only did so because Staffieri kneed him in the abdomen. After Anderson testified that he "would never try to injure someone like that," the Court permitted the State to introduce evidence of Anderson's prior convictions for Assault Third Degree and

Offensive Touching. At no time before the jury retired to deliberate did Trial Counsel move for a judgment of acquittal.

4. During closing arguments, the prosecutor told the jury that "the State believes that we've proven each and every element of [the] charge to you beyond a reasonable doubt." Trial Counsel did not object to that statement. After receiving instructions and deliberating, the jury returned a guilty verdict.

5. On February 20, 2015, after trial but before sentencing, the trial judge received a letter from a juror, who stated she felt "very unsettled about the 'guilty' verdict."[1] The juror indicated she "felt Mr. Staffieri was equally, if not *MORE* at fault since he had been drinking that morning and is the one who offered the first 'knee to the groin.'. . . [I]t felt *terribly* wrong pinning the charge solely on Mr. Anderson."[2] The juror continued:

> During deliberations, there were 3 points in the packet of information that I sensed corralled us into a guilty verdict, and regardless of what the 'law' states, that was unjust, to say the least. Again, I felt they were *both* at fault.
>
> Having said all of that, I hope that justice is served equally somehow, and that Mr. Anderson does not receive the full weight of what should be appropriated to both men in this case.[3]

The trial judge forwarded the letter to the parties upon receipt.

---

[1] D.I. 46, Ex. B.
[2] *Id.* (emphasis in original).
[3] *Id.* (emphasis in original).

6. After the jury returned its verdict, the Court ordered a pre-sentence investigation. Anderson did not participate in his interview with the pre-sentence office, although that office attempted to contact him several times. At sentencing on May 29, 2015, the Court received comments from the State and from Trial Counsel. Anderson relied on Trial Counsel's statements and did not offer his own remarks. The Court sentenced Anderson to eight years at Level V, suspended after three years for decreasing levels of supervision.

7. Anderson took a direct appeal to the Delaware Supreme Court with the assistance of Michael Modica, Esq. ("Appellate Counsel"). Appellate Counsel raised five issues on appeal: (1) the evidence was not sufficient to support a conviction; (2) this Court erred in admitting evidence of Anderson's prior convictions; (3) this Court erred by failing, *sua sponte*, to give a jury instruction regarding "Character of the Accused"; (4) the State committed prosecutorial misconduct during closing arguments; and (5) this Court denied Anderson his right to allocution during sentencing. The Delaware Supreme Court rejected each such claim of error and affirmed the decision below.[4]

8. Anderson filed this Motion on July 25, 2016, raising six grounds for post-conviction relief, including five claims of ineffective assistance of counsel and one claim of judicial abuse of discretion. As to the claims of ineffective

---

[4] *Anderson v. State*, 2016 WL 618840 (Del. Feb. 15, 2016).

4

assistance, Anderson alleges Trial Counsel was ineffective by failing to: (1) object to the prosecutor's statements, highlight inconsistent testimony, and move for judgment of acquittal; (2) communicate effectively with Anderson; (3) keep Anderson apprised about his PSI and sentencing; (4) cross-examine Staffieri effectively; and (5) properly advise Anderson regarding the advisability of a plea bargain.[5] As to his claim of judicial abuse of discretion, Anderson alleges the Court erred by failing to take appropriate action after receiving the juror letter referenced above. By order dated August 15, 2016, the Court ordered Trial Counsel to respond to the Motion by affidavit and further ordered the State to respond after Trial Counsel's affidavit was filed. Finally, the Court granted Anderson time to respond to the submissions by Trial Counsel and the State. Anderson filed his response on October 14, 2016.

## ANALYSIS

### A. Procedural bars to Anderson's claims

9.     Before addressing the merits of any claim for post-conviction relief, this Court first must determine whether the motion procedurally is barred under Rule 61.[6] A motion for post-conviction relief is barred if it is untimely, repetitive, or procedurally improper, or if it formerly was adjudicated.[7]

---

[5] D.I. 42 at 2-4.
[6] *See Bailey v. State*, 588 A.2d 1121, 1127 (Del. 1991); *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).
[7] *Bailey*, 588 A.2d at 1127.

10. Notwithstanding those bars, this Court may consider a motion that otherwise is barred if the motion is based on claims that the Court lacked jurisdiction or the motion satisfies the pleading requirements set forth in Rule 61(d)(2).[8] Rule 61(d)(2) requires that a movant plead with particularity that (i) new evidence exists that creates a strong inference that the movant actually is innocent in fact of the acts underlying the charges of which he was convicted; or (ii) a new rule of constitutional law, made retroactive to cases on collateral review by the United States Supreme Court or the Delaware Supreme Court, applies to the movant's case and renders the conviction or death sentence invalid.

11. Arguably, Anderson's claim of judicial abuse of discretion is barred by Rule 61(i)(3). Under the unusual circumstances explained below, however, the Court nonetheless has addressed the merits of that claim. Anderson's remaining claims of ineffective assistance of counsel could not be raised at trial or on direct appeal from his conviction.[9] Anderson timely filed the Motion, it is his first such motion under Rule 61, and the Court therefore properly may consider the merits of his claims.

## B. Anderson's claim of judicial abuse of discretion

12. In support of his claim of "judicial closed mindedness/abuse of discretion," Anderson alleges "[Trial Counsel] was made aware of the fact that the

---

[8] Rule 61(i)(5).
[9] *State v. Evan-Mayes*, 2016 WL 4502303, at *2 (Del. Super. Aug. 25, 2016).

Court did receive correspondence from a juror, intimating that she and quite possibly other members of the jury[] felt as though Mr. Staffieri was not completely blameless in this incident. However, she felt pressured by the jury instructions to reject the ruling of self-defense."[10]

13. Arguably, this claim procedurally is barred under Rule 61(i)(3) because it could have been raised in Anderson's direct appeal. Although the trial judge undoubtedly advised the parties of the letter, as both Anderson and Trial Counsel acknowledge, the letter does not appear on the docket. It therefore is possible, without knowing more, that Appellate Counsel was not aware of the letter when he was preparing the appeal. For that reason, the Court will address the merits of Anderson's claim.

14. Anderson does not explain how this letter, or the Court's response to it, amounts to an abuse of discretion.[11] He does not elaborate on what further action the Court should have taken in response to the letter. The letter indicates the juror was troubled by the verdict she felt compelled to reach as a result of the Court's instructions, but Anderson has not identified any error in the Court's instructions regarding self-defense or victim involvement, nor did Appellate

---

[10] D.I. 42 at 3.

[11] In his reply, D.I. 49 at 4, Anderson suggests that his argument regarding the jury note relates not to judicial abuse of discretion, but rather to Trial Counsel's failure to "ask more questions about [Staffieri's] drinking … [which] would have shown a different story and could have shown that Mr. Staffieri was the aggressor." To the extent this claim in the Motion is one for ineffective assistance, it is addressed below in connection with Anderson's fourth claim of ineffective assistance: lack of proper cross examination.

7

Counsel identify any such error in the jury instructions. Accordingly, Anderson has not shown that any judicial abuse of discretion occurred, let alone an abuse of discretion that affected the verdict or Anderson's sentence.

## C. Anderson's claims of ineffective assistance of counsel

15. The majority of Anderson's claims relate to alleged ineffective assistance by Trial Counsel. To prevail on a claim for ineffective assistance of counsel, a defendant must establish both that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.[12] There is a strong presumption that counsel's representation was reasonable.[13] Accordingly, a defendant must make specific allegations of actual prejudice and substantiate them; vague allegations or conclusory statements will not suffice.[14]

16. Anderson's first claim of ineffective assistance has three sub-parts; Anderson contends Trial Counsel failed to (a) object to the prosecutor's statements during summation, (b) properly emphasize inconsistencies in Officer Davis's testimony, and (c) move for a judgment of acquittal. As to Trial Counsel's alleged error in failing to object to what Anderson contends was prosecutorial misconduct, the Delaware Supreme Court reviewed the State's closing arguments *de novo* and

---

[12] *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).
[13] *Wright v. State*, 671 A.2d 1353, 1356 (Del. 1996).
[14] *Id.*; *Monroe v. State*, 2015 WL 1407856, at *5 (Del. Mar. 25, 2015).

8

determined that no misconduct occurred.[15] Trial Counsel therefore committed no error, since there was no prosecutorial misconduct to which to object. As to Trial Counsel's presentation of the case to the jury, including purported inconsistencies in Officer Davis's testimony, Anderson neither identifies with specificity what those inconsistencies were, nor explains how Trial Counsel failed to capitalize on them. In his affidavit in response to the Motion, Trial Counsel contends his decisions were strategic ones. Trial Counsel's strategic decisions regarding how to cross-examine witnesses and how to argue the case to the jury are entitled to a strong degree of deference, which cannot be overcome with vague references to Trial Counsel's failure to do one or both of those things effectively.[16] Finally, with respect to Trial Counsel's failure to move for judgment of acquittal, the Delaware Supreme Court in resolving Anderson's direct appeal reviewed the sufficiency of the evidence under a plain error standard and found no error. Even under a less deferential standard of review, the parties at trial each offered the testimony of witnesses regarding what transpired between Anderson and Staffieri. Anderson admitted to striking Staffieri, but contended he did so only in self-defense. Although there was some evidence to support a self-defense theory, it was for the jury to weigh the evidence and the credibility of the witnesses. Anderson's

---

[15] *Anderson*, 2016 WL 618840, at *5.
[16] *See, e.g. Harrington v. Richter*, 131 S.Ct. 770, 788-89 (2011); *Walker v. State*, 2007 WL 2949145, at *1 (Del. Oct. 11, 2007); *State v. Lake*, 2010 WL 1740886, at * (Del. Super. Apr. 26, 2010).

9

argument on this claim therefore fails to meet the second prong of *Strickland* because he has not demonstrated that, had Trial Counsel so moved, it is reasonably probable the trial judge would have granted such a motion.

17. The second ground Anderson raises in support of his claim of ineffective assistance is that Trial Counsel did not communicate well with Anderson. Specifically, Anderson alleges Trial Counsel "provided . . . misleading information regarding [the] case . . . [and Anderson] was not given proper understanding of how to proceed with [his] trial."[17] In his affidavit, Trial Counsel denies this charge, arguing that he provided Anderson with a copy of all Rule 16 discovery and was available to meet with Anderson to discuss questions and trial strategy. In his reply, Anderson asserts that Trial Counsel told him there is no "self-defense law" and Anderson therefore did not know what to say on the stand, leading him to state that he never would hurt someone like that, which in turn led to the admission of his prior convictions for impeachment purposes. In other words, Anderson contends Trial Counsel did not properly prepare him to testify.

18. Anderson has not alleged with specificity sufficient grounds to meet the first prong of *Strickland* as to this claim. His allegation that Trial Counsel did not properly prepare him to testify does not defeat the strong presumption that Trial Counsel's representation was reasonable. Trial Counsel could not, consistent

---

[17] D.I. 42 at 3.

10

with ethical standards, give Anderson a script of how to answer questions. It is clear from the record that self-defense was the trial strategy selected by Trial Counsel and understood by Anderson; his testimony and Trial Counsel's arguments focused on a self-defense theory. Anderson's decision to volunteer that he never would hurt someone in that manner, which then opened the door to admission of his prior convictions, does not demonstrate that Trial Counsel's representation fell below an objective standard of reasonableness.

19. Anderson next argues Trial Counsel was ineffective by failing to keep Anderson apprised regarding sentencing, including the fact that a pre-sentence investigation was to be conducted. The trial judge announced in open court that a pre-sentence investigation would be done, and the record reflects that the pre-sentence office attempted to contact Anderson directly several times, without success. Anderson's argument is not supported by the record and does not meet the first prong of *Strickland*.

20. Anderson's fourth ineffective assistance claim is that Trial Counsel did not effectively cross-examine Staffieri. Specifically, Anderson contends Trial Counsel should have asked Staffieri, the victim, whether he was an alcoholic, which "would have shone a different light on the case and would have revealed the true nature of both parties['] involvement in what happened."[18] Trial Counsel

---

[18] *Id.*

responds that the decision not to pursue this line of questioning or call additional witnesses was a tactical one. The record reflects that evidence of Staffieri's consumption of alcohol on the day of the incident was presented through the testimony of Allan Bobb. Anderson contends Trial Counsel should have questioned Staffieri further after he admitted at trial that he "drinks in the morning to stop the 'shakes,'"[19] but Anderson does not explain how his contentions satisfy either element of *Strickland*. Trial Counsel is entitled to a presumption that his representation was reasonable, and this Court should not second-guess tactical decisions regarding how aggressively to cross-examine a witness.[20] Trial Counsel did present evidence that Staffieri was under the influence of alcohol at the time of the incident, and Anderson has not shown that, even if Trial Counsel had asked additional questions, there is a reasonable probability the jury would have reached a different verdict.

21. Finally, Anderson argues Trial Counsel was ineffective by steering him toward trial, rather than encouraging him to accept the plea offer extended by

---

[19] D.I. 49 at 4.

[20] *See Outten v. State*, 720 A.2d 547, 557 (Del. 1998) ("Whether to call a witness, and how to cross-examine those who are called are tactical decisions.") (citing *United States v. Lively*, 817 F. Supp. 453, 462 (D. Del. 1993), *aff'd*, 14 F.3d 50 (3d Cir. 1993) ("[The defendant's] claim of ineffective assistance of counsel in regard to calling him as a defense witness boils down to a disagreement with his counsel's trial strategy. Mere criticism of a tactic or strategy, however, is not in itself sufficient to support a charge of inadequate representation. This is particularly dispositive [w]here a defendant, fully informed of the reasonable options before him, agrees to follow a particular strategy at trial. . . . Calling [the defendant] as a witness was a strategic decision and under the *Strickland* standard does not support [the defendant's] claim of ineffective assistance of counsel.") (internal quotations and citations omitted)).

the State. In his response, Trial Counsel explains that Anderson rejected the State's plea offer at first case review, did not appear for final case review, and never advised Trial Counsel that he wished to reconsider a plea. Anderson did not respond to Trial Counsel's position. This claim does not meet the prejudice prong of *Strickland.* That is, even if Trial Counsel failed properly to present the State's plea offer, that plea was for the charge for which Anderson was convicted, and the recommended sentence was for open sentencing after a pre-sentence investigation, which is precisely what was ordered after Anderson was convicted. Accordingly, this claim, and the entirety of Anderson's Motion, fails to establish ineffective assistance of counsel.

**NOW, THEREFORE,** for the foregoing reasons, **IT IS ORDERED** that William D. Anderson's Motion for Post-Conviction Relief is **DENIED.**

Abigail M. LeGrow, Judge

Original to Prothonotary
cc:    Jenna Milecki, Deputy Attorney General
       Timothy J. Weiler, Esquire
       William D. Anderson (SBI #00292886)

13