888 F.2d 996
 The UNITED STATES
v.
Patrick R. DiLORETO, a/k/a "Patsy," a/k/a "Cheech", Richard
A. DiLoreto, a/k/a "Ricky", Patrick J. Pieri, Sr., Walter
Von Elliott, Ronald R. Thomas, Barry A. Baer, Michael C.
Claypool, Peter J. Vella.
Appeal of Richard DiLORETO, (Five Cases) in No. 88-3635.
Appeal of Patrick J. PIERI, Sr., in No. 88-3636.
Appeal of Michael C. CLAYPOOL, in No. 88-3660.
Appeal of Patrick R. DiLORETO, in No. 88-3694.
Appeal of Peter VELLA, in No. 88-3708.
 Nos. 88-3635, 88-3636, 88-3660, 88-3694 and 88-3708.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 8, 1989.
Decided Nov. 7, 1989.
Rehearing and Rehearing In Banc Denied Jan 11, 1990.
Rehearing and Rehearing In Banc Denied Jan. 11, 1990.
 
 John P. Garhart (argued), Erie, Pa., for appellant Richard DiLoreto.
 Bruce L. Getsinger (argued), Schroeck & Segel, P.C., Erie, Pa., for appellant Patrick J. Pieri, Sr.
 Paul J. Susko (argued), Erie, Pa., for appellant Michael C. Claypool.
 William P. Weichler (argued), Leonard G. Ambrose, Ambrose and Friedman, Erie, Pa., for appellant Patrick R. DiLoreto.
 Paul D. Boas (argued), Berlin, Boas & Isaacson, Pittsburgh, Pa., for appellant Peter Vella.
 Charles D. Sheehy, Acting U.S. Atty., Constance M. Bowden (argued), Paul J. Brysh, Asst. U.S. Attys., Pittsburgh, Pa., for appellee.
 Before MANSMANN, COWEN and ALDISERT, Circuit Judges.
 OPINION OF THE COURT
 MANSMANN, Circuit Judge.
 
 
 1
 Each of the five defendants before us, convicted as a participant in a conspiracy to distribute narcotics, raises issues peculiar to his particular conviction. In addition, each adopts, pursuant to Federal Rule of Appellate Procedure 28(i), the arguments of every other defendant. Hence, these appeals present us with a number of alleged errors. We conclude, however, that resolution of these appeals rests on one point in particular, common to all defendants. The credibility of the government's witnesses was a chief issue at trial, one contested by all of the defendants. Because in the course of the prosecutor's closing argument he engaged in improper vouching of witnesses who had been intimately involved in the drug operation, we will vacate the judgments of conviction and remand the cases for a new trial.
 
 I.
 
 2
 In April 1988 a federal grand jury impanelled in Erie, Pennsylvania returned a 34 count indictment against defendants Richard A. DiLoreto, Patrick J. Pieri, Sr., Michael C. Claypool, Peter J. Vella, and Patrick R. DiLoreto.[1] The charges included conspiracy, possession of cocaine with intent to deliver, possession of marijuana with intent to distribute, and other related drug offenses. It was the government's theory that the defendants were involved in a continuing enterprise to distribute marijuana and cocaine in and about Erie. Patrick D. DiLoreto was considered to be the head of this loosely knit drug distribution organization, responsible for locating and purchasing the cocaine and marijuana from other individuals. Patrick would then supply the illegal substances to the other defendants in quantities capable of redistribution.
 
 
 3
 The cases were joined for trial and tried to a jury. Each defendant was found guilty of his respective counts. All five defendants filed timely appeals. We have jurisdiction on appeal pursuant to 28 U.S.C. Sec. 1291.
 
 II.
 
 4
 None of the defendants testified at trial. Instead, their defense relied on cross-examination to assault the government's witnesses, admitted accomplices whose testimonies had been solicited vis-a-vis favorable plea agreements. Opening statements by the defense included such contentions as these:
 
 
 5
 That the witnesses that the government will call, will be witnesses who are testifying pursuant to deals, arrangements, prom [sic] promises of immunity. In fact, when [the prosecutor] indicated, during his presentation, that you are going to get an education about this particular aspect, I think you are going to get an education about how these people become witnesses. Because the testimony is clearly going to show and we will prove that every witness that testifies in this case would not be testifying as a witness in this case but for the fact they have a deal or some type of preferential arrangement with the government that allows them to walk out of a penitentiary or allows them to escape criminal prosecution completely. And that testimony comes from a corrupt and polluted source.
 
 
 6
 * * *
 
 
 7
 * * *
 
 
 8
 The government's case, as has already been noted, rests largely on witnesses whose unsavory nature will be made clear to you by the evidence produced.
 
 
 9
 Additionally, each of the defendant's attorneys argued in his closing that the government's witnesses were biased and incredible. Excerpts from their closings reflect the following:
 
 
 10
 At the beginning of this case, I told you that every witness that would be called by the government had some type of special arrangement with the government.... And I also told you that these would be individuals who would be motivated by their own benefits, by their own interests, by their own motives. And I think that's become obvious through the testimony that you have heard in this case.
 
 
 11
 * * *
 
 
 12
 * * *
 
 
 13
 This case, ladies and gentlemen is built upon testimony that is the lowest form of testimony admissable in a court of law.
 
 
 14
 * * *
 
 
 15
 * * *
 
 
 16
 This case rises and falls on the testimony of the government witnesses, and those witnesses from here to here, through all these days and all that testimony, come from the people who I believe to a person you will recall are here not because they are great citizens, but because they have an arrangement with the government.
 
 
 17
 Attempting to rehabilitate the credibility of his witnesses, the prosecutor responded in his rebuttal with the following assertions:
 
 
 18
 You have heard all about the witnesses. These witnesses are all terrible people. They are all drug users. They are all drug dealers. Of course they are. Of course they are. Who else do you get to come into court, sit on the stand and tell you about where they got drugs but drug dealers. You want to learn about the law, go to a lawyer. You want to learn about farming, you go to a farmer. You want to learn about drugs, you go to a drug dealer. That's exactly where you go.
 
 
 19
 And you have heard all these witnesses got great deals; they have all been immunized. These witnesses, some of them did come in and plead guilty. They came in, pled guilty and were sentenced by these courts. We don't put the sentence--we don't give these witnesses the sentences, the courts do. The judges do. They are the ones who give these sentences to all of the defendants and to all the witnesses.
 
 
 20
 And you also heard that they have a plea bargain, and you heard what happened when that plea bargain is not fulfilled. If they lie, that bargain is off. That's it, no bargain. We don't take liars. We don't put liars on the stand. We don't do that.
 
 
 21
 Defendants objected to the highlighted statements and requested a mistrial on the grounds that the prosecutor's comments constituted improper prosecutorial vouching depriving them of a fair trial. Their motions for mistrial, along with their subsequent request for a curative instruction, were denied. Defendants now argue that the prosecutor's statements constitute reversible error. Our standard of review of the district court's denial of mistrial is abuse of discretion. United States v. Wright-Barker, 784 F.2d 161, 175 (3d Cir.1984).
 
 
 22
 We begin our analysis of these remarks by recognizing that a prosecutor's reference to the condition of a plea bargain requiring truthful testimony is proper rehabilitation. United States v. Oxman, 740 F.2d 1298, 1303 (3d Cir.1984). A prosecutor may not, however, vouch for the veracity of a government witness or express his personal opinion concerning the guilt of the defendant. United States v. Beaty, 722 F.2d 1090, 1097 (3d Cir.1983); United States v. Swinehart, 617 F.2d 336, 339 (3d Cir.1980). The underlying reasoning for this vouching prohibition was best explained by the Court in United States v. Young as follows:
 
 
 23
 [S]uch comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence. See Berger v. United States, 295 U.S., at 88-89 [55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935) ].
 
 
 24
 470 U.S. 1, 18, 105 S.Ct. 1038, 1047, 84 L.Ed.2d 1 (1985).
 
 
 25
 In our Circuit, vouching must be differentiated between expressions of personal opinion based on the evidence and those based on information dehors the record. We have held consistently that remarks based on the evidence cannot serve as grounds for reversal per se unless the defendant was prejudiced by the remarks. See United States v. Beaty, 722 F.2d 1090 (3d Cir.1983); United States v. Somers, 496 F.2d 723 (3d Cir.1974). Our opinion, however, as to the effect of comments based on facts not adduced at trial has developed along a different line.
 
 
 26
 In United States v. Schartner, 426 F.2d 470 (3d Cir.1970), we held that per se reversal is required when a prosecutor expresses an opinion on the guilt of a defendant based on evidence not on the record. This per se rule was limited strictly to those extraneous comments that impacted upon the guilt of the defendant. See United States v. Somers, 496 F.2d at 740 (3d Cir.1974) (court declined to extend per se reversal rule to cover statements that do not constitute an opinion on the defendant's guilt); United States v. Lefevre, 483 F.2d 477, 479 (3d Cir.1973).
 
 
 27
 Nonetheless, this per se rule was later expanded to include a prosecutor's comments on a witness' credibility. Although no one case formally marks the rule's extension, it is clearly evidenced in United States v. Swinehart, 617 F.2d 336 (3d Cir.1980) that a more expansive view had been adopted. We summarized the law on this point in Swinehart as follows:
 
 
 28
 In the past, the Court has distinguished between prosecutorial remarks regarding the defendant's guilt or a witness' credibility that are based on the evidence and those that are based on information outside the record. We have stated that the latter constitute reversible error per se, but the former are grounds for new trial only if the defendant was prejudiced by the remarks.
 
 
 29
 Id. at 339 (emphasis added) (footnote omitted); see also United States v. Beaty, 722 F.2d at 1097 (1983); United States v. Gallagher, 576 F.2d 1028, 1041-1043 (3d Cir.1978). Therefore, we hold that a prosecutor's remarks regarding the defendant's guilt or a witness' credibility, if based on information not adduced at trial, require reversal per se.[2] With this precept in mind, we now turn to the statements at issue.
 
 III.
 
 30
 And you also heard that they [government witness] have a plea bargain, and you heard what happened when that plea bargain is not fulfilled. If they lie, that bargain is off. That's it, no bargain. We don't take liars. We don't put liars on the stand. We don't do that.
 
 
 31
 By this language in his closing rebuttal statement, the prosecutor asserted to the jury that the government does not use liars as witnesses in its cases. We are not persuaded by the government's argument that the statements were meant to emphasize the fact that testifying truthfully at trial was part of the plea agreements. The remarks are better understood as meaning that the government, as a matter of policy in the prosecution of its cases, does not use liars as witnesses. No explanation was given, however, of how the government ascertains the honesty or veracity of its witnesses. Indeed, we have found nothing in the record upon which the prosecutor could have grounded his statement. There must then have been some other evidence, unknown or unavailable to the jury, which convinced the prosecutor that his witnesses were not liars. Obviously, the defendants were not confronted with this extraneous evidence and afforded cross-examination, nor was the jury given an opportunity to engage in its own evaluation. What the jury was led to do instead was merely to infer that other information existed which the government used to verify the credibility of its witnesses prior to introducing their testimonies at trial. Such an inference alone could reasonably have persuaded the jury to believe that the government's witnesses were telling the truth when they testified, by virtue of their own personal involvement, as to the nature and extent of the defendants' criminal activities. It follows that if these witnesses were telling the truth, then the defendants were surely guilty of the charged offenses.
 
 
 32
 The possibility that the jury engaged in such deductive reasoning, prompted by the government's vouching of its witnesses, especially in light of the crucial nature of the witnesses' credibility here, clearly jeopardized the defendants' right to be tried solely on the basis of the evidence presented at trial. We find that the assertions may have improperly influenced the jury and contributed substantially to its verdicts. These concerns have previously occasioned our prohibition of this kind of prosecutional comment. See e.g. United States v. Gallagher, 576 F.2d at 1041. We hold that the prosecutor's comment, which vouched for the credibility of the government's witnesses and was based on facts outside of the record, constituted per se reversible error. Accordingly, the district court's denial of defendants' motion for mistrial represented an abuse of discretion.IV.
 
 
 33
 Defendants also argue that the district court improperly inhibited cross-examination by ruling that "[i]f one counsel examines on credibility, we believe that will cover the whole field and any other questions on that would be repetitious." Because a new trial will be had, we need not decide whether this question would also have amounted to reversible error in each of the appeals. Moreover, we are confident that the trial court will allow appropriate cross-examination by all counsel subject to the court's authority to limit cross-examination by various counsel when and if undue repetition takes place or the cross-examination exceeds the scope of direct examination. In this respect, the district court will recognize that relevancy of testimony on the conspiracy issue covers a broader spectrum than that relating to discrete substantive offenses. Furthermore, when a government witness does not specifically refer to a given defendant by name, that does not necessarily mean that the direct testimony has not implicated that defendant. Thus, each defendant should be given the opportunity to cross-examine each government witness even if the witness may not have directly referred to the defendant or implicated that defendant.
 
 
 34
 Because we are reversing on other grounds, we also need not reach Patrick DiLoreto's contention that the district court should have given specific jury instructions regarding the net worth method of proof which was utilized to prove his two counts of income tax evasion. Other circuits have addressed this issue and have held that explanatory instructions in net worth cases are mandated. See Greenberg v. United States, 295 F.2d 903, 907 (1st Cir.1961); United States v. Tolbert, 367 F.2d 778, 780 (7th Cir.1966); United States v. Hall, 650 F.2d 994, 998 (9th Cir.1981); United States v. Carter, 721 F.2d 1514, 1538 (11th Cir.), cert. denied, 469 U.S. 819, 105 S.Ct. 89, 83 L.Ed.2d 36 (1984). Inasmuch as the Supreme Court has attested to the complexity of this method of proof, see Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954), district courts should be guided by the caveat that, where requested, such instructions should be given.
 
 
 35
 We next caution the district court to respect the strictures of Federal Rule of Criminal Procedure 11(e)(6) prohibiting introduction of evidence adduced at plea bargaining. It is apparent from the record that Patrick Pieri and Agent Kelly met on at least two occasions prior to the return of the indictment. Certain statements made by Pieri in the course of these discussions were later introduced at trial. We express no opinion as to whether these discussions amounted to a plea bargain situation governed by Rule 11. We note, however, that where the testimony approaches the line of prohibition, the government has the threshold burden of introducing testimony by competent witnesses that no plea bargaining discussion had been instituted prior to the making of a statement that may be questioned under the rule.
 
 
 36
 Finally, we emphasize the necessity for defense counsel to make specific objections to all evidentiary matters, should they wish to preserve issues on appeal.
 
 V.
 
 37
 We will vacate the judgments of conviction of all five defendants and remand this case for a new trial.
 
 
 38
 SLOVITER, Circuit Judge, dissenting from the denial of the petition for rehearing, with whom Judge Becker, Judge Stapleton, and Judge Greenberg join.
 
 
 39
 Were the only issue before this court on the government's petition for rehearing whether, in the circumstances of this case, the defendant was entitled to a new trial based on the language used by the prosecutor, I would not vote for rehearing in banc. The opinion of the panel, however, goes further, reading this court's case law to establish a per se reversal right whenever the government makes remarks regarding not only the defendant's guilt but also a witness credibility that are based on information not adduced at trial.
 
 
 40
 The panel bases this per se rule on dictum used in United States v. Swinehart, 617 F.2d 336 (3d Cir. 1980) (per curiam), a case in which the improper prosecutorial statements were limited to comments regarding evidence adduced at trial and which the court determined did not prejudice the defendant. I recognize that this court's case law on this issue has not always followed a straight line. Compare United States v. Schartner, 426 F.2d 470 (3d Cir. 1970) (reversible error for prosecutor to make statement implying a personal belief in defendant's guilt and inviting jury to rely on prosecutor's experience and sincerity) with United States v. Somers, 496 F.2d 723, 740 (3d Cir. 1974) (limiting Schartner to its facts and stating per se rule is generally inapplicable to prosecutorial misconduct); see also United States v. Beaty, 722 F.2d 1090, 1097 (3d Cir. 1983) (adhering to distinction between prosecutor's personal opinions based on evidence and those based on facts not in evidence but finding opinion was based on evidence and that judge's instruction dispelled any improper inference); United States v. Gallagher, 576 F.2d 1028, 1042-43 (3d Cir. 1978), cert. dismissed, 444 U.S. 1040, 100 S.Ct. 713, 62 L.Ed.2d 675 (1980) (applying same rule but finding no ground for reversal). The ambiguity of the appropriate rule to be gleaned from our earlier cases would itself warrant an in banc determination as to the rule this court should apply.
 
 
 41
 Beyond that, however, use of a per se reversal standard to any species of prosecutorial misconduct, such as improper vouching, deviates from the clear instruction of the Supreme Court that the courts must look in each such case to whether the defendant has been prejudiced before directing a reversal. In United States v. Young, 470 U.S. 1, 11-12, 105 S.Ct. 1038, 1044, 84 L.Ed. 1 (1985), the Court stated:
 
 
 42
 Inappropriate prosecutorial comments, standing alone, would not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding. Instead, as Lawn [v. United States, 355 U.S. 339 [78 S.Ct. 311, 2 L.Ed.2d 321] (1958)] teaches, the remarks must be examined within the context of the trial to determine whether the prosecutor's behavior amounted to prejudicial error.
 
 
 43
 In United States v. Hasting, 461 U.S. 499, 103, S.Ct. 1974, 76 L.Ed.2d 96 (1983), the Court held that a harmless error analysis must be applied even to the prosecutor's failure to heed the court's prior admonitions against comment on a defendant's failure to rebut the prosecution's case. The Court recognized the Court of Appeals' supervisory power over prosecutors within its jurisdiction, but held nonetheless that "the interests preserved by the doctrine of harmless error cannot be so lightly and casually ignored in order to chastise what the court viewed as prosecutorial overreaching." Id. at 507, 103 S.Ct. at 1979.
 
 
 44
 I see no reason why the principle articulated by the Supreme Court in Young and Hasting does not override the earlier statement of this court in Swinehart. Nonetheless, because the panel apparently believes, notwithstanding what appears to me to be the clear message from the Supreme Court, that it was bound by prior decisions of this court to apply a per se rule to the concededly improper prosecutorial vouching made in this case, rehearing by the court in banc is appropriate for full consideration as to whether our earlier precedent can withstand the light later cast on the issue by Supreme Court decisions. Therefore, I dissent from the denial of rehearing in this case.
 
 
 
 [1]
 The indictment included three other defendants who subsequently pled guilty pursuant to plea agreements with the government
 
 
 [2]
 The burden upon the defendant to demonstrate prejudice continues with respect to statements based on the evidence