

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-30-1999

# Hartey v. Vaughn

Precedential or Non-Precedential:

Docket 97-2034

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"Hartey v. Vaughn" (1999). *1999 Decisions.* Paper 219.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/219

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed July 30, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 97-2034

PATRICK HARTEY,

      Appellant

v.

DONALD VAUGHN,
THE DISTRICT ATTORNEY OF THE
COUNTY OF PHILADELPHIA;
THE ATTORNEY GENERAL OF THE STATE
OF PENNSYLVANIA

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 96-06812)
District Judge: Honorable Herbert J. Hutton

Argued October 8, 1998

BEFORE: GREENBERG, NYGAARD, and
NOONAN,* Circuit Judges

(Filed: July 30, 1999)

      Norris E. Gelman (argued)
      6th & Walnut Streets
      The Curtis Center
      Philadelphia, Pa. 19106

      Attorney for Appellant
_____

*Honorable John T. Noonan, Jr., Senior Judge of the United States Court
of Appeals for the Ninth Circuit, sitting by designation.

Donna G. Zucker (argued)
Chief, Federal Litigation
Ronald Eisenberg
Deputy District Attorney
Lynne Abraham
District Attorney
1421 Arch Street
Philadelphia, Pa. 19102

Attorneys for Appellee

OPINION OF THE COURT

GREENBERG, Circuit Judge:

I. INTRODUCTION

Patrick Hartey, the petitioner in this habeas corpus proceeding under 28 U.S.C. S 2254, appeals from an order of the district court entered on November 14, 1997, adopting the report and recommendation of a magistrate judge dated April 1, 1997, and denying Hartey's petition without an evidentiary hearing. Inasmuch as both the magistrate judge and the district court wrote comprehensive opinions, see Hartey v. Vaughn, 1997 WL 710946 (E.D. Pa. Nov. 14, 1997) (district court opinion), the Superior Court of Pennsylvania wrote a published opinion on Hartey's direct appeal, see Commonwealth v. Hartey, 621 A.2d 1023 (Pa. Super. Ct. 1993), and we recently wrote a published opinion in a habeas corpus case brought by Thomas McCandless, a codefendant, see McCandless v. Vaughn, 172 F.3d 255 (3d Cir. 1999), we only need summarize the background of the case.

In August 1982, the Commonwealth of Pennsylvania tried Hartey and McCandless together in the Philadelphia Common Pleas Court for crimes arising from the murder of Theodore Stebelski. Originally, the police arrested John Barth for the murder, but in part as a result of information Barth supplied, the Commonwealth refocused the investigation on Hartey and McCandless. The prosecution's theory at the trial was that McCandless and Hartey killed

2

Stebelski so that he could not testify against McCandless at a criminal trial. Although the prosecution intended to call Barth as a witness to testify about the killing, and expected that his testimony would directly link Hartey to the murder scene, Barth did not appear at trial. The trial judge ruled, however, that Barth's preliminary hearing testimony could be read into the record as a substitute for his live testimony and the court permitted its use against both defendants. The jury convicted both Hartey and McCandless offirst degree murder, criminal conspiracy, and possession of an instrument of crime.

Unfortunately, Hartey's original attorneys (not counsel on this appeal) did not prosecute his appeal appropriately and thus there were substantial delays in his direct appellate process. When the appeal finally was prosecuted, Hartey presented six issues to the Superior Court, all framed as ineffective assistance of counsel claims. The Superior Court denied all six claims on the merits in its published opinion. See Commonwealth v. Hartey, 621 A.2d 1023. Hartey thereafter unsuccessfully sought allocatur from the Supreme Court of Pennsylvania, Commonwealth v. Hartey, 656 A.2d 117 (Pa. 1993), advancing only four of the claims.

Then on October 4, 1996, Hartey filed the proceedings in the district court leading to this appeal, raising the following four issues which he also had presented to the Pennsylvania Superior and Supreme Courts:

> 1. Trial counsel was ineffective for failing to ob ject to the Court's accomplice instruction which permitted the conviction of an accomplice based on his joining the actor in `an illegal act' and failed to focus the attention of the jury on whether or not the accomplice shared or harbored the specific intent to kill that had to be found as to the actor.

> 2. Trial counsel was ineffective for failing to pr eserve his objections to the improper bolstering of the Barth preliminary hearing testimony in his written post trial motions, and was also ineffective for failing to object to the improper bolstering of the Barth testimony by the prosecutor in her opening address.

3

3. Trial counsel was ineffective for failing to ob ject to the Court's exclusion of defense witnesses who would have testified to the poor reputation for truth and veracity on the part of the most critical Commonwealth witness, John Barth.

4. Trial counsel was ineffective for failing to pr operly preserve his objection to the Court's refusal to answer the first jury inquiry in the affirmative.

On this appeal Hartey raises only the first two issues noted above but expands on them as he presents them as both ineffective assistance of counsel claims and due process claims. Hartey's refocusing of the claims is understandable as our order granting the certificate of appealability recites as follows:

The foregoing request for a certificate of appealability is granted for the purpose of deciding whether Hartey's right to due process was denied by: (1) the prosecutor's opening statement and the testimony of Assistant District Attorney Murray which may have led the jury to believe that the prosecution had independent evidence corroborating witness Barth's testimony that was not presented to the jury. See United States v. Molina- Guevara, 96 F.3d 698, 704-705 (3d Cir. 1996); United States v. DiLoreto, 888 F.2d 996, 999 (3d Cir 1989), overruled in part, on other grounds, by United States v. Zehrbach, 47 F.3d 1252 (3d Cir. 1995) (en banc); and (2) the court's instruction regarding the definition of an accomplice. See Smith v. Horn, 120 F.3d 400, 411-15 (3d Cir. 1997); Rock v. Zimmerman, 959 F.2d 1237, 1246 (3d Cir. 1992).

Nevertheless, we must consider our order granting the certificate of appealability in the context of this case, which established that Hartey pursued a writ of habeas corpus in the district court solely on ineffective assistance of counsel grounds, and the court denied the writ concluding that Hartey was not entitled to relief on that theory. Thus, we are constrained to assess Hartey's claims under the Sixth Amendment and not under the Due Process Clause. See Smith v. Farley, 25 F.3d 1363, 1365 n.2 (7th Cir. 1994) (claims not raised before district court in habeas petition are waived on appeal).

4

II. DISCUSSION

At the outset of our discussion of the merits of Hartey's claims we refer to our recent opinion in McCandless v. Vaughn, 172 F.3d 255. In that habeas corpus proceeding under 28 U.S.C. S 2254, we granted a writ to McCandless, Hartey's co-defendant, on the ground "that the prosecution did not fulfill its duty to protect McCandless's constitutional right to confront the key witness[John Barth] against him." See McCandless, 172 F.3d at 258. Hartey, however, did not raise this Confrontation Clause claim before the Pennsylvania state courts or in the district court. In fact, Hartey did not advance this point even in his primary briefs to this court; instead, he challenged his incarceration based on this confrontation violation only after we requested the parties to submit letter briefs detailing what effect, if any, McCandless had on this appeal. Thus, Hartey cannot raise the confrontation issue at this late date, and McCandless cannot control our result on this appeal. See Baker v. Barbo, 177 F.3d 149, 156 n.7 (3d Cir. 1999).

Hartey seeks to avoid this rather obvious result by relying on Finney v. Zant, 709 F.2d 643, 646-47 (11th Cir. 1983), for the proposition that "justice" requires that we permit him to obtain relief on the basis of McCandless. Certainly, we can understand how it might appear to be incongruous that only one of two petitioners can obtain relief on the basis of a constitutional error apparently applicable to both. Nevertheless, habeas corpus law involves the application of well-established principles that, among other things, recognize the comity between the federal and state courts and usually require that a petitioner under 28 U.S.C. S 2254 present his claims for relief in the first instance in the state courts. We are not at liberty to disregard these principles because our concept of what "justice" might require and thus Hartey's failure to raise the Confrontation Clause issue until after argument on this appeal bars him from relying on it now. Therefore, we confine our discussion to the ineffective assistance of counsel claims that are actually before us.1

_____

1. We delayed our decision on this appeal pending disposition of McCandless, which was argued before we heard argument in this case.

5

The thrust of Hartey's claim relating to the prosecutor's opening statement and Murray's testimony is that they invited the jury to believe that independent evidence not presented to it corroborated Barth's preliminary hearing testimony. Hartey's challenge to the jury instructions centers on their alleged failure to inform the jury that it could convict him of first degree murder only if it determined that he, rather than merely McCandless, had a specific intent to kill.

Inasmuch as Hartey (unlike McCandless) filed his habeas corpus petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") we must apply the standard of review as required by that Act in 28 U.S.C. S 2254(d). The AEDPA greatly circumscribes our review of state court decisions. Thus, we recently indicated that the AEDPA

> mandates a two-part inquiry; first, the federal court must inquire whether the state court decision was `contrary to' clearly established federal law, as determined by the Supreme Court of the United States; second, if it was not, the federal court must evaluate whether the state court judgment rests upon an objectively unreasonable application of clearly established Supreme Court jurisprudence.

Matteo v. Superintendent, 171 F.3d 877, 880 (3d Cir. 1999) (en banc). Accordingly, as we explained in Matteo, section 2254(d) "firmly establishes the state court decision as the starting point in habeas review." Id. at 885. Of course, on this appeal we exercise plenary review over the order of the district court as that court did not conduct an evidentiary hearing and nothing in the AEDPA or Matteo requires that we do otherwise. See Cabrera v. Barbo, 175 F.3d 307, 312 (3d Cir. 1999); Zettlemoyer v. Fulcomer, 923 F.2d 284, 291 n.5 (3d Cir. 1991).

_____

Moreover, we further delayed our decision in order to give the parties an opportunity to file letter briefs commenting on McCandless. As it happens, however, McCandless is of limited significance here because that case turned on an issue not properly before us on this appeal.

6

A. Improper Vouching

Hartey's first claim is that his trial counsel was ineffective for failing to object to improper vouching for Barth's preliminary hearing testimony, which he alleges illegally bolstered the statements of the key witness against him. Specifically, Hartey complains that there was improper vouching when the prosecutor stated in her opening argument that the government's agreement with Barth was based on "verifying" his statements, and when Assistant District Attorney Murray testified that the agreement was conditioned on "corroborating" Barth's information. Hartey is correct that federal law establishes that reference to extra-record evidence by the government constitutes improper bolstering that, in certain circumstances, may justify a reversal of a defendant's conviction. See United States v. DiLoreto, 888 F.2d 996, 998–99 (3d Cir. 1989) (overruled in part, on other grounds, by United States v. Zehrbach, 47 F.3d 1252, 1267 (3d Cir. 1995) (en banc)). Thus, an attorney's failure to object to the government's improper vouching for its witnesses could give rise to an ineffective assistance of counsel claim.

The Pennsylvania Superior Court, however, rejected Hartey's ineffective assistance claim because it concluded that there had not been improper vouching. See Hartey, 621 A.2d at 1026–27. The court noted first that, under state law, it was the government's obligation to provide full disclosure about any favorable agreements reached with its witnesses. See id. at 1026. Then, it stated that the prosecutor's statements and Murray's testimony had not referred to extra-record evidence as the government presented corroborating evidence during the trial. See id. at 1027. Specifically, the court pointed to the testimony of the medical examiner, who confirmed Barth's account of how the murder had occurred, as well as other evidence establishing the ill will between McCandless and Stebelski. See id.

Applying the Matteo standard, we cannot conclude that the Superior Court's application of law was contrary to established Supreme Court precedent or was an unreasonable application of clearly established Supreme Court jurisprudence. A defendant's ineffective assistance of

7

counsel claim can succeed only if he can show that counsel's conduct was professionally unreasonable. See Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984). Thus, if there is no merit to Hartey's claims that the prosecution's statements and Murray's testimony should not have been permitted at trial, his counsel cannot be deemed ineffective for not having objected to their presentation, as it was not unreasonable for him to acquiesce in the presentation of proper statements and testimony.

We have indicated that a determination of whether there has been improper vouching and, if so, whether there should be a reversal must be determined on a case by case basis. See United States v. Zehrbach, 47 F.3d at 1264-67. Moreover, much as did the Superior Court, we have looked to the extensive trial record to determine whether an allegedly improper statement in fact referred to extra-record evidence. See DiLoreto, 888 F.2d at 999.

The Superior Court's conclusion that the government presented corroborating evidence at Hartey's trial was not contrary to clearly established federal law as determined by the Supreme Court and was not an unreasonable application of Supreme Court jurisprudence. See 28 U.S.C. S 2254(d)(2) (stating that district court can grant writ for petitioner in state custody if state court decision was based on unreasonable determination of the facts). For instance, the prosecution presented the medical examiner's opinion that the victim, Stebelski, first had been hit with a blunt object on the head and then shot in the back. This testimony confirmed Barth's statements that McCandless had pistol-whipped Stebelski and then shot him as he was running away. Other evidence that generally supported Barth's statements included testimony that McCandless had a motive to kill Stebelski, who had brought various criminal complaints against McCandless and shot at McCandless' wife's car, that Stebelski came to McCandless' garage that day at McCandless' urging, and that the garage, which McCandless owned, contained the type of bullets used in the shooting.

Hartey argues, however, that this corroborating evidence did not verify his involvement in the murder but only that

of McCandless. We find this argument unconvincing. The prosecutor and Murray spoke merely of corroborating Barth's account of how the murder occurred; the evidence presented at trial supplied this corroboration. The jury was thus free to infer, although it need not have done so, that given the accuracy of Barth's account in many respects, his statements implicating Hartey were also accurate.

Therefore, we conclude that the Superior Court did not act unreasonably in finding that there had not been improper vouching because the prosecution had in fact presented evidence corroborating Barth's statements at trial. Like the Superior Court, we have reversed convictions based on improper vouching only where we have concluded that evidence in the record could not have supported the prosecution's statements. See DiLoreto, 888 F.2d at 999 (reversing on direct appeal where prosecutor in closing argument stated that its witnesses were not liars because government does not "take liars" but there was no evidence presented at trial of how government ascertains the honesty of its witnesses); United States v. Molina–Guevara, 96 F.3d 698, 704–05 (3d Cir. 1996) (reversing on direct appeal where prosecutor stated in closing that had an absent witness testified, he would have confirmed the testimony of other government witnesses). For us to grant a writ in this case would require us to hold that the government never may reveal that its agreement with a witness included a corroboration requirement, even when it presents corroborating evidence at trial. Neither Supreme Court jurisprudence nor our own case law requires such a ruling, and therefore, applying the Matteo standard, we must reject Hartey's ineffective assistance of counsel claim based on his attorney's failure to object to and preserve objections to improper vouching.2

_____

2. We also note that this is not a case where the government emphasized the corroboration required by its agreement throughout the trial. The prosecutor mentioned the verification requirement briefly in her opening, and Murray, who testified early in this ten–day trial, referred to it at only
one point in his testimony, within the context of describing Barth's agreement with the government. The prosecutor did not discuss the issue in her closing statement.

9

B. The Jury Charge

We now consider Hartey's claims that his counsel was
ineffective for failing to object and preserve his objection to
the accomplice liability charge read to the jury. The
Superior Court explained this issue as follows:

>  Appellant next contends that trial counsel was
> ineffective for failing to object to the trial court's jury
> charge. Specifically, appellant argues that the court's
> charge directed the attention of the jury to the state of
> mind of the co-defendant and permitted appellant's
> conviction based on the state of mind of the co-
> defendant. Appellant asserts that the court never
> informed the jury that in order to convict appellant of
> first degree murder it had to find, beyond a reasonable
> doubt, that appellant had the specific intent to kill.

Commonwealth v. Hartey, 621 A.2d at 1028. Once again,
the Superior Court disposed of the issue by looking at the
underlying merit of Hartey's claim; it found that counsel
was not ineffective because the jury instructions were
correct.

We need not evaluate the accomplice liability instruction
itself because we conclude that the record establishes that
Hartey's counsel was effective on this issue by making and
preserving his objections. In any event, the Superior Court
considered Hartey's challenge to the accomplice liability
instruction, and thus Hartey suffered no prejudice from
counsel's alleged failure to preserve his objections to the
instruction. See Strickland, 466 U.S. at 694, 104 S.Ct. at
2068 (defendant must show prejudice caused by counsel's
conduct to succeed on ineffective assistance of counsel
claim).

As we have indicated, the trial transcript shows that
Hartey's counsel did object to the accomplice liability
charge. As the district court discussed in its decision, the
transcript reveals that Hartey's counsel sought changes to
the accomplice liability instruction that the trial judge
rejected. For instance, counsel asked for the accomplice
charge to include an instruction that the jury should
consider the evidence against each defendant separately.
The judge rejected this instruction and counsel noted his

10

objections for the record. Finally, when the jury showed its confusion about the nature of accomplice liability by asking during its deliberations whether two individuals tried for the same charge could be innocent or guilty of different degrees of murder, Hartey's counsel vigorously argued that the trial court should simply answer this question yes. Such an answer implicitly would have told the jury that it had to consider the intent of each defendant separately. The judge disagreed with Hartey's counsel, stating his view that, legally, the answer to the question should be no. Ultimately, over counsel's objection, the court asked the jurors to rephrase their question and then re-read to them the charge it previously had given on accomplice liability. Based on these facts, and particularly in light of the Superior Court's consideration of Hartey's challenge to the instruction on the merits, we find that Hartey's counsel was not ineffective under Strickland.

## III. CONCLUSION

For the foregoing reasons the order of November 14, 1997, will be affirmed.

11

NOONAN, Circuit Judge, dissenting:

Before the Pennsylvania Superior and Supreme Courts, Hartey's first point on appeal was this: "Trial counsel was ineffective for failing to object to the Court's accomplice instruction which permitted the conviction of an accomplice based on his joining the actor in `an illegal act' and failed to focus the attention of the jury on whether or not the accomplice shared or harbored the specific intent to kill that had to be found as to the actor."

Hartey made ineffective assistance of counsel in regard to this instruction his first claim in his habeas petition to the district court. As the majority observes, it is this claim that is before us now.

Hartey was tried for a murder committed by McCandless, as to which the state's theory was that Hartey was an accomplice. The trial court instructed the jury: "A defendant is guilty of a crime if he is an accomplice of another person who commits a crime. He is an accomplice if with the intent of promoting or facilitating the commission of the crime, he solicits, commands, encourages, requests the other person to commit it, or aids, agrees to aid or attempts to aid the other person in planning or committing it. . . . You may find the defendant guilty of a crime on the theory that he was an accomplice as long as you are satisfied beyond a reasonable doubt that the crime was committed and that the defendant was an accomplice of the person who committed it."

The trial court went on to define murder in the first degree. It instructed the jury that first degree murder was an intentional killing. Intentional killing, the court said, was "by means of poison, or by lying in wait, or by any other kind of wilful, deliberate, and premeditated killing. Therefore, in order to find the defendants guilty of murder in the first degree, you must find that the killing was a wilful, deliberate, and premeditated act. You must ask yourself the question, Did the defendants have the wilful, deliberate and premeditated specific intent to kill at the time of the killing?"

Defense counsel did not competently object to these instructions. The instructions, however, permitted the jury

12

to convict Hartey of first degree murder if it found that he had the intent of promoting McCandless's crime of murder. Under Pennsylvania law, specific intent to kill is an ingredient of first degree murder. See Smith v. Horn, 120 F.3d 400, 411 (3rd Cir. 1997). The trial court omitted this factual requirement and so instructed the jury in a way contrary to Sandstrom v. Montana, 442 U.S. 510, 521 (1979). Defense counsel's failure to object to Sandstrom error constituted ineffective assistance. It fell below professional standards of competence and there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. See Strickland v. Washington, 466 U.S. 668, 687, 694 (1984).

The commonwealth contends that the jury instructions were correct as the decision of the Superior Court so holds, Commonwealth v. Hartey, 621 A.2d 1023, 1028 (Pa. Super. Ct. 1993), and that this decision of state law binds this court. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); 28 U.S.C. S 2254(d)(1). But the omission in a jury instruction of an element of the crime is contrary to Sandstrom; the Superior Court's endorsement of the error does not supply the omission or correct the error.

The majority in this court states: "We need not evaluate the accomplice liability instruction itself because we conclude that the record establishes that Hartey's counsel was effective on this issue by making and preserving his objections." But in no way did counsel point out the Sandstrom error. No one looking at the vague and halting remonstrance of counsel could imagine that he was calling the attention of the trial judge to a problem of constitutional dimensions and citing to Supreme Court authority already five years old and already employed to vacate a number of state criminal convictions. See e.g., Arroyo v. Jones, 685 F.2d 35, 39-41 (2d Cir. 1982); Guthrie v. Warden, Maryland Penitentiary, 683 F.2d 820, 826 (4th Cir. 1982).

The majority opinion goes on to say, "In any event, the Superior Court considered Hartey's challenge to the accomplice liability instruction and thus Hartey suffered no prejudice from counsel's alleged failure to preserve his objections to the instructions." But the Superior Court

13

reached the unconstitutional conclusion that the accomplice instructions were correct; and therefore the Superior Court did not adequately address Hartey's contention that his counsel failed to object to them.

The Superior Court contented itself with noting that the trial court's charge on accomplice liability had "mirrored the relevant statutory definitions" and that the trial court had told the jurors to ask themselves if "the defendants" had the "premeditated specific intent to kill at the time of killing." Commonwealth v. Hartey, 621 A.2d at 1028. The reference to "the defendants" in the plural did not save a charge that had unequivocally told the jury they could find Hartey to be guilty as an accomplice to murder if he had had the intent of promoting the killing. The single reference to "defendants" was cloudy; it was not specified that each of the defendants must independently have the specific intent to kill; a juror could reasonably have understood that the intent of one defendant should be attributed to the other as the instruction on accomplice suggested. At the very least, the instruction, if taken to require the specific intent to kill on the part of the accomplice, was contradicted by the instruction on accomplice liability. Contradictory instructions cancel each other out, leaving no instruction. They do not cure the Sandstrom error. The error was of constitutional dimension. See Smith v. Horn, 120 F.3d at 415. So was counsel's failure to object to it.

The commonwealth has a fallback position: the error was harmless because the jury convicted Hartey of conspiracy to murder, and conspiracy to murder is an agreement intentionally to kill. The commonwealth relies on the trial court's instruction that first degree murder consists in intentional killing. But the trial court's instruction on conspiracy to murder blunted the focus on intentional killing by stating that the jurors would have to find that in planning or committing murder "the defendants do so with the intent of promoting or facilitating the commission of the crime of murder." Specific intent to kill was not noted. That the jury was in fact at sea because of the erroneous instruction is confirmed by their note during deliberations asking the court "to explain what an accomplice is according to law" in response to which the court magnified

14

its error by repeating its accomplice instructions without objection. In any event, the commonwealth's point has no relevance now. Hartey was sentenced to no less thanfive, and no more than ten, years on the conspiracy count, the term to run concurrently with his life imprisonment for murder. Long ago he finished his sentence for conspiracy.

Hartey's claim of ineffective assistance of counsel in his prosecution for murder suffices for him to be accorded habeas. Two further considerations make grant of the great writ not only legally appropriate but morally fair. First, review of Hartey's case is narrowly circumscribed by the AEDPA because no less than three members of the bar undertook to represent him in the 1980's and defaulted his state appeal by failing to file an appellate brief. The Superior Court cured these defaults as best it could by reinstating the appeal. No federal remedy exists for the harm that they inflicted on Hartey. But no one familiar with the AEDPA can doubt that Hartey's position today has suffered because of these lapses by his lawyers.

Second, Thomas McCandless, the co-defendant, the already-convicted murderer, has been held by this court to deserve a new trial. See McCandless v. Vaughn, 172 F.3d 255, 270 (3d Cir. 1999). It is possible, indeed it is likely, that he will walk. The opinion of this court throws out the principal testimony offered against him by John Barth seventeen years ago, "the only substantial evidence implicating McCandless in the murder." Id. at 266. Barth, the missing witness whose preliminary hearing testimony the state then relied on, is now deceased, apparently having committed suicide after being arrested in a drug bust. As our opinion in McCandless observes, the state "did not expend the minimal effort necessary" to get a warrant for telephone records by which they could track Barth and have him on hand for the trial. Id. at 268. The prosecutor's efforts to locate their star witness were "casual." Id. The prosecutor "did not satisfy its Sixth Amendment duty to make reasonable good faith efforts to obtain Barth's presence at trial." Id. at 270.

Hartey was as deeply injured by the prosecutor's procedure as McCandless. This court finds that a procedural bar, enacted in the interest of state-federal

15

comity, forbids us to consider this injury now. This court concedes that the disparate results "might appear to be incongruous." Not incongruous, I should say, but unjust. It is good that there be a way, not procedurally barred, by which the injustice may be avoided.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit