**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-4522
_____

UNITED STATES OF AMERICA

v.

DAVID CLOUDEN,
                              Appellant
_____

On Appeal from the District Court
of the Virgin Islands
(D.C. Criminal No. 1-07-cr-00042-008 )
District Judge: Honorable Anne E. Thompson
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
April 24, 2013

Before:   McKEE, *Chief Judge*, SCIRICA AND VANASKIE, *Circuit Judges*

(Filed: July 31, 2013)
_____

OPINION
_____

VANASKIE, *Circuit Judge.*

Appellant David Clouden appeals his convictions on one count of conspiracy to

commit money laundering, in violation of 18 U.S.C. § 1956(h), and five counts of money

laundering, in violation of 18 U.S.C. §1956(a)(1)(B)(i).  Clouden contends that the

evidence was insufficient to sustain a conviction on any of the six counts.  He further

argues that the District Court erroneously admitted testimony from his mother identifying his signature. We reject these arguments and will affirm the District Court's judgment.

I.

We write primarily for the parties, who are familiar with the facts and procedural history of this case. Accordingly, we set forth only those facts necessary to our analysis.

In 2001, Myron Punter, a native of the Virgin Islands, began selling cocaine in Alaska. Punter obtained the cocaine via express mail from Isaiah Fawkes, a childhood friend who was still residing in the Virgin Islands. Pursuant to their agreement, Fawkes mailed Punter five to nine ounces of cocaine approximately once per week from 2001 to early 2003. In return, Punter sent Fawkes payments of approximately $5,000 to $9,000 via Western Union wire transfers or money orders. After becoming concerned that the high volume of Western Union transactions in their names might raise suspicion, Fawkes and Punter began to use surrogate senders and receivers to transmit the drugs and payments. Punter recruited acquaintances in Alaska, including Leigh Bennett, to send money to Fawkes on his behalf, while Fawkes provided Punter with the names of individuals in the Virgin Islands to whom payment should be sent.

David Clouden – a friend of Fawkes who also grew up in Frederiksted, St. Croix – was one of the individuals to whom Punter sent money at Fawkes' direction. Between August 20, 2002, and October 19, 2002, while he was residing in St. Croix, Clouden received five money wire transfers from senders in Alaska. The first four transfers were from Bennett in the amounts of $3,000; $6,500; $6,000; and $7,000, respectively. The

2

final transfer of $2,000 was sent by Punter himself.  Although Clouden had never met Bennett or Punter, he accepted and cashed the wire transfers, which totaled $24,500.

On June 14, 2007, a grand jury returned an indictment charging Clouden and seven co-defendants with conspiracy to distribute cocaine, conspiracy to commit money laundering, and various substantive money laundering offenses.  Clouden and six other co-defendants proceeded to trial.[1]  The jury convicted Clouden of one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h), and five counts of money laundering, in violation of 18 U.S.C § 1956(a)(1)(B)(i).[2]  Clouden was later sentenced to concurrent terms of twenty-eight months' imprisonment, three years of supervised release, and a special assessment.  Clouden timely appealed his conviction on all counts.  He does not appeal any portion of his sentence.

II.

---

[1]  Five of Clouden's co-defendants' appeals were joined with this case.  *See United States v. Garcia*, No. 11-1999; *United States v. Maragh*, No. 11-2036; *United States v. Allick*, No. 11-4305; *United States v. Alfred*, No. 11-4343; and *United States v. Young*, 11-4344.  On January 15, 2013, a panel of this Court affirmed the judgment of conviction and sentence of co-defendant Fawkes.  *See United States v. Fawkes*, 510 F. App'x 183 (3d Cir. 2013).

[2]  Initially, the Government also charged Clouden with money laundering under a "promotion theory" pursuant to section 1956(a)(1)(A)(i).  The District Court later granted the Government's motion to strike the promotion language from all counts of the indictment, and thus the jury was presented with a redacted indictment charging Clouden under only a "concealment theory" pursuant to section 1956(a)(1)(B)(i).  (*Compare* Supplemental Joint Appendix ["S.J.A."] 49-50 (redacted indictment), *with* Supplemental Appendix ["S.A."] 21-22 (original indictment).)   Nonetheless, Clouden's judgment of conviction specifies section 1956(a)(1)(A)(i) as the basis for the guilty verdict.  Because the redacted indictment only references section 1956(a)(1)(B)(i), and in light of the parties' silence as to this error in the judgment, we will assume the judgment's reference to section 1956(a)(1)(A)(i) is merely a scrivener's error.

The District Court had jurisdiction under 48 U.S.C. § 1612(a) and 18 U.S.C. § 3231, and we have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

A.

Clouden first challenges the sufficiency of the evidence supporting his convictions. Clouden moved for a judgment of acquittal on all counts at the close of the Government's case, and the District Court denied the motion. When a defendant challenges the sufficiency of the evidence in the district court, we exercise plenary review on appeal and must affirm the jury's verdict if "there is substantial evidence that, when viewed in the light most favorable to the government, would allow a rational trier of fact to convict." *United States v. Lee*, 612 F.3d 170, 178 (3d Cir. 2010) (citation omitted) (internal quotation marks omitted). Our review is "particularly deferential," as "[i]t is not for us to weigh the evidence or to determine the credibility of the witnesses." *United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998) (citation omitted) (internal quotation marks omitted). Clouden therefore carries a "very heavy burden" on his sufficiency challenges. *Id.* (citation omitted) (internal quotation marks omitted).

To obtain a conviction for money laundering under 18 U.S.C. § 1956(a)(1)(B)(i), the Government has the burden of establishing beyond a reasonable doubt: "(1) an actual or attempted financial transaction; (2) involving the proceeds of [a] specified unlawful activity; (3) knowledge that the transaction involves the proceeds of some unlawful activity; and (4) . . . knowledge that the transaction [was] designed in whole or in part to conceal the nature, location, source, ownership, or control of the proceeds of [a] specified unlawful activity." *United States v. Richardson*, 658 F.3d 333, 337-38 (3d Cir. 2011)

4

(alteration in original) (citation omitted) (internal quotation marks omitted). Clouden's

challenge to the sufficiency of the evidence supporting his money laundering convictions

focuses on the third and fourth elements. According to Clouden, "the Government failed

to produce admissible evidence from which a rational trier of fact could logically infer

that [he] knew that the source and nature of the funds were the proceeds of illegal

activity." (Appellant's Br. 27.)

We cannot agree. As to the third element, the Government presented evidence

that Fawkes and Punter ran a drug trafficking operation pursuant to which Fawkes sent

Punter cocaine to sell in Alaska, and Punter remitted payment to Fawkes, or someone

designated by Fawkes, via wire transfer or money orders. Multiple witnesses testified

that Fawkes and Clouden were longtime friends who were often seen together in St.

Croix. The evidence further established that Fawkes instructed Punter to send Clouden

funds for the drugs, and that Clouden received and cashed $24,500 in money wire

transfers from Bennett and Punter – both of whom Clouden had never met – in a span of

just over two months. The jury therefore could have reasonably inferred that Clouden

was aware of Fawkes' drug trafficking activity and received the wire transfers on

Fawkes' behalf. Viewing this evidence in the light most favorable to the Government,

we hold that a rational juror could have concluded that Clouden knew the money wire

transactions – sent to him by total strangers from Alaska for sums totaling more than

$20,000 – involved the proceeds of *some* unlawful activity "constitut[ing] a felony under

State, Federal, or foreign law. . . ." 18 U.S.C. § 1956(c)(1); *see United States v. Casper*,

5

956 F.2d 416, 422 (3d Cir. 1992) (observing that the government may satisfy its burden of proof by circumstantial evidence).

The evidence was likewise sufficient to allow the jury to conclude that the Government met its burden of proof with respect to the fourth element. The jury heard testimony that Punter and Fawkes used surrogates to send and receive drugs and money because they believed they "look[ed] suspicious" by sending and receiving a high volume of packages and payments in their own names. (Joint Appendix ["J.A."] 396.)[3] Punter testified that Fawkes supplied him with names of individuals in the Virgin Islands – including Clouden – to whom payment for drugs should be sent. Furthermore, Bennett testified that he sent Clouden four wire transfers at Punter's request. The evidence also established that Clouden cashed five wire transfers from Punter and Bennett, both of whom were total strangers to Clouden. Considered in the light most favorable to the Government, evidence of transactions with such "highly irregular features," coupled with evidence of "structuring the transaction[s] in a way to avoid attention," was sufficient to allow a rational trier of fact to conclude that Clouden knew that "someone else had [the] purpose" of concealing the true "nature, location, source, ownership, or control of the money." *Richardson*, 658 F.3d at 340 ("[T]he government need not prove that the defendant [himself] had the intent to conceal one of the listed attributes of the funds. It is enough to prove that the defendant knew someone else had that purpose.") (citation omitted) (internal quotation marks omitted).

---

[3] Clouden adopts the appendix filed by co-defendant Jamaal Young in *United States v. Young*, No. 11-4344.

Clouden also challenges the sufficiency of the evidence supporting his conspiracy conviction. To prove a conspiracy to commit money laundering in violation of section 1956(h), the Government must show: "(1) that an agreement was formed between two or more persons; and (2) that the defendant knowingly became a member of the conspiracy." *United States v. Greenidge*, 495 F.3d 85, 100 (3d Cir. 2007). According to Clouden, the Government failed to prove that he "knew of the specific objective of the money-laundering conspiracy and agreed to participate in the specific illegal objective of the conspiracy." (Appellant's Br. 27-28.)

Again, we disagree. In light of the close relationship between Clouden and Fawkes, and the unusual arrangement to have substantial funds wired to Clouden by total strangers, a jury could logically conclude that Clouden was aware of the agreement between Punter and Fawkes when he accepted the wire transfers, and that he accepted the transfers on Fawkes' behalf with this knowledge. *United States v. Navarro*, 145 F.3d 580, 593 (3d Cir. 1998) ("[T]he government can rely entirely on circumstantial evidence to prove [a] conspiracy [charge] as long as the inferences drawn from the circumstantial evidence have a logical and convincing connection to the facts established.") (citation omitted) (internal quotation marks omitted).

B.

Clouden also alleges several points of error concerning the admission of testimony from his mother, Kaleen Clouden, identifying his signature on the Western Union checks cashed in his name. First, Clouden contends that the Government failed to establish an adequate factual basis for admitting Ms. Clouden's identification testimony, as required

7

by Fed. R. Evid. 701 and 901. Because neither Clouden nor any of his co-defendants contemporaneously objected to Ms. Clouden's identification testimony, we review the District Court's decision to admit her signature identification testimony for plain error. *See United States v. Moore*, 375 F.3d 259, 262 (3d Cir. 2004).

The Federal Rules of Evidence limit lay witnesses to giving opinion testimony that is: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge. . . ." Fed. R. Evid. 701. A non-expert witness's opinion testimony concerning handwriting must also satisfy the requirements of Rule 901, i.e. the opinion must be based on familiarity with the writing "that was not acquired for the current litigation." Fed. R. Evid. 901(b)(2).

We cannot say that the District Court committed plain error by admitting Ms. Clouden's signature identification testimony. Prior to giving the testimony, Ms. Clouden testified that she was Clouden's mother, and that Clouden lived with her in St. Croix "[f]rom birth until he became an adult and moved to live with his girlfriend." (J.A. 584.) Ms. Clouden also testified that she observed Clouden's signature while he lived with her, and that she "know[s]" her son's signature. (J.A. 566.) Thus, Ms. Clouden's identification of Clouden's signature was "rationally based on" her own perceptions gained from living with him from birth to adulthood, rather than from technical or scientific knowledge, or familiarity acquired for trial. *See* Fed. R. Evid. 701, 901.

Next, Clouden argues that the District Court erroneously allowed the Government to impeach Ms. Clouden with her grand jury testimony. After establishing the factual

8

basis for Ms. Clouden's signature identification testimony, the Government introduced the checks cashed in Clouden's name and asked Ms. Clouden if she recognized the signatures on those checks. (*See* S.J.A. 490-524) (exhibits 7A-7E). Ms. Clouden testified that she did not recognize the signatures on the checks in exhibit 7B, even though she testified before the grand jury that she *did* recognize the signatures on those checks as her son's.[4] The Government then attempted to impeach Ms. Clouden using the copies of the checks she had identified and initialed before the grand jury (exhibit 1B). Following repeated objections by defense counsel, the Government abandoned its efforts to impeach and opted instead to pursue in-court identification of the signatures. Thus, Clouden's argument that the Government engaged in improper impeachment is wholly inapposite, because Ms. Clouden was, in fact, never impeached.[5]

Finally, Clouden argues that the Government improperly bolstered Ms. Clouden's signature identification testimony during closing arguments by stating: "In fact, a nonexpert may even be more qualified [than an expert], at least with respect to a single signature that they are familiar with . . . ." (S.J.A. 450.) We agree with the Government

---

[4] Before the grand jury, copies of the checks with Ms. Clouden's initials indicating her recognition of Clouden's signature were entered into evidence as exhibit 1B.

[5] Clouden further argues that the Government violated *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972), by not disclosing the checks initialed by Ms. Clouden during her grand jury testimony (exhibit 1B) until trial. This argument is meritless because, as the record makes clear, defense counsel received copies of these documents on August 14, 2007, well before trial commenced. (*See* S.A. 26) (Government's Notice Regarding Availability of Discovery) (listing documents including "Money Wire Transfer Records – Identification of Clouden's Signature by Kathleen Clouden").

that this statement "was a common sense response invited by Clouden's argument that [Ms. Clouden] lacked the ability to identify her son's signature simply because the FBI could not perform a comparison" and only experts were qualified to identify writings. (Gov't Br. 33-34.) Nothing in the Government's remarks improperly vouched for Ms. Clouden's credibility or testimony, or "reference[d] extra-record evidence" so as to constitute improper bolstering. *Hartey v. Vaughn*, 186 F.3d 367, 371-72 (3d Cir. 1999).

## III.

For the foregoing reasons, we will affirm the District Court's judgment.